Ford M. CONVERSE, Appellant,

v.

Stewart L. UDALL, Secretary of the
Interior, Appellee.

No. 21697.

United States Court of Appeals
Ninth Circuit.

Aug. 19, 1968.

Rehearing Denied Oct. 7, 1968.

Certiorari Denied Jan. 13, 1969.

See 89 S.Ct. 635.

**617**

William B. Murray (argued), Portland, Or., for appellant.

George R. Hyde (argued), Roger P. Marquis, Dept. of Justice, Washington, D. C., Sidney Lezak, U. S. Atty., Portland, Or., for appellee.

Before KOELSCH and DUNIWAY, Circuit Judges, and PREGERSON, District Judge.*

DUNIWAY, Circuit Judge:

Converse appeals from a judgment upholding a decision of the Secretary of the Interior. The Secretary's decision is reported at 72 Interior Dec. 141 (1965); that of the District Court is reported in Converse v. Udall, D.Or., 1966, 262 F. Supp. 583. This opinion assumes familiarity with those decisions. We affirm.

In 1955 (P.L. 167, 69 Stat. ch. 375, p. 367) Congress adopted an Act commonly called The Surface Resources Act. Section 4 (30 U.S.C. § 612) reserves to the United States, as to unpatented mining claims located after July 23, 1955, the effective date of the Act, the right to manage and dispose of the vegetative surface resources and to manage other surface resources, except mineral deposits subject to location. Section 5 (30 U. S.C. § 613) sets up machinery for determining, as to any unpatented claim located before that date, "the validity and effectiveness of any right or title to, or interest in or under such mining claim, which the mining claimant may assert contrary to or in conflict with the limitations and restrictions specified in section 4 of this Act * * *." (69 Stat. p. 371). The Act further provides, in section 7 (30 U.S.C. § 615): "Nothing in this Act shall be construed in any manner to limit or restrict or to authorize the limitation or restriction of any existing rights of any claimant under any valid mining claim heretofore located, except as such rights may be limited or restricted as a result of a proceeding pursuant to section 5 of this Act." (69 Stat. p. 372). One of the purposes of the Act was to eliminate some of the abuses that had occurred under the mining laws. H.R.Rep. 730, 84th Cong., 1st Sess., 2 U.S.Code Cong. & Ad. News, pp. 2474, 2478 (1955). See Coleman v. United States, 9 Cir., 1966, 363 F.2d 190, 197, rev'd on other grounds, 1968, 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170; Funderberg v. Udall, 9 Cir., 1968, 396 F.2d 638. But Congress did not intend to change the basic principles of the mining laws. H.R.Rep. 730, supra at 2480.

The claims in question being located in a National Forest, the Forest Service, acting under Section 5 of the Act, instituted before the Department of the Interior the proceedings that have culminated in the present appeal.

The Hearing Examiner did not hold that Converse's unpatented claims are void. He merely held that, as of July 23, 1955, a valid discovery had not been made on them, and that therefore the limitations of Section 4 of the Act apply to the claims. Converse still has his claims, can work them, and can apply for a patent. The Hearing Examiner's decision has been affirmed three times, once by the Assistant Director, Bureau of Land Management, once by the As-

---

* Honorable Harry Pregerson, District Judge, Central District of California, sitting by designation.

sistant Solicitor, acting for the Secretary, and once by the District Court.

### 1. *Jurisdiction*

■ Appellant asserted that jurisdiction is conferred on the District Court by the Administrative Procedure Act (now 5 U.S.C. § 701), the Declaratory Judgment Act (28 U.S.C. §§ 2201, 2202), the Act of June 25, 1948, relating to federal questions (28 U.S.C. § 1331), and the Act of October 5, 1962, (28 U.S.C. §§ 1361, 1391). The Declaratory Judgment Act does not confer jurisdiction, Skelly Oil Co. v. Phillips Petroleum Co., 1950, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194, nor does § 1391, which deals with venue. The Secretary contends that the Administrative Procedure Act does not apply, but concedes the applicability of 28 U.S.C. § 1361. However, we have held that the Administrative Procedure Act does apply, Adams v. Witmer, 9 Cir., 1958, 271 F.2d 29, 32–33; Coleman v. United States, supra, 363 F.2d at 194. The portion of our decision in *Coleman* dealing with the Administrative Procedure Act was not questioned by the Supreme Court. See also Foster v. Seaton, 1959, 106 U.S.App.D.C. 253, 271 F.2d 836, cited with apparent approval in Best v. Humboldt Placer Mining Co., 1963, 371 U.S. 334, 338 n. 7, 83 S.Ct. 379, 9 L.Ed.2d 350. Cf. Chournos v. United States, 10 Cir., 1964, 335 F.2d 918. We think that a federal question is involved (Butte & Superior Copper Co. v. Clark-Montana Realty Co., 1919, 249 U.S. 12, 22–23, 39 S.Ct. 231, 63 L.Ed. 447), that the Court had jurisdiction under section 1331 and the Administrative Procedure Act, and that venue was proper under § 1391. We do not decide whether jurisdiction also exists under § 1361.

### 2. *Non-substantive Questions.*

Converse asserts that there were many procedural errors in the administrative proceedings, and that the Hearing Examiner was biased and prejudiced. All of these claims are carefully and correctly considered and disposed of in the opinion of the District Court and we do not discuss them further.

### 3. *The proper legal standard of "discovery".*

Converse argues that the evidence does not support the decision, and that an improper legal standard was applied. We have reviewed the evidence and the findings, and we conclude that the latter are fully supported.[1] The only substantial question is whether the legal standard applied was proper. We hold that it was.

The Act of 1955, as we have seen, provides for a determination of "the validity and effectiveness" of mining claims, (§ 5(c)) in connection with a request "for determination of surface rights." (§ 5(a)). It specifically refers to mining claims "heretofore located." (§§ 5(a), 5(b), 5(d), 6, 7.) This we take to mean before July 23, 1955, the effective date of the Act. But there is no definition in the Act of "validity" or "effectiveness." For this we must look elsewhere.

Ever since the adoption of the General Mining Law of 1872 (17 Stat. 91), the statutes have permitted location of "Mining-claims upon veins or lodes of quartz or other rock in place bearing gold, silver, cinnabar, lead, tin, copper,

---

1. The Secretary argues that, on questions of fact, the decision of the Secretary, based on substantial evidence, is conclusive, in the absence of fraud or imposition. This position is a retreat from that taken in Coleman v. United States, supra, 363 F.2d at 194, where the rule proposed left out the phrase "based on substantial evidence." We think that the proper rule is that stated in the Administrative Procedure Act, 5 U.S.C. § 706(2) (E)— whether the findings are supported by substantial evidence. See Henrikson v. Udall, 9 Cir., 1965, 350 F.2d 949; Foster v. Seaton, 1959, 106 U.S.App.D.C. 253, 271 F.2d 836; Palmer v. Dredge Corp., 9 Cir., 1968, 398 F.2d 791.

or other valuable deposits," and has required, as to claims located after May 10, 1872, "the discovery of a vein or lode within the limits of the claim located." (30 U.S.C. § 23, formerly R.S. 2320, § 2 of the Act of 1872). And the law provides for the obtaining of a patent "for any land claimed and located for valuable deposits" (30 U.S.C. § 29, formerly R.S. 2325, § 6 of the Act of 1872). Thus the only statutory standard has been and still is the "discovery" of "veins or lodes" containing "valuable deposits" of the named metals or others. The Congress has left implementation of this standard to the Executive and the Courts.

All of the cases hold that whether the statutory requirements have been met is a question of fact.[2] To guide the fact finder, the Department and the courts long ago developed what has come to be called the "prudent man" test, much as the courts have developed the "reasonable man" test to guide the fact finder in negligence cases.

In 1905, the Supreme Court in Chrisman v. Miller, 197 U.S. 313, 322, 25 S. Ct. 468, 470, 49 L.Ed. 770 approved and adopted the "prudent man" test as developed by the Land Department and stated by it in Castle v. Womble, 19 L.D. 455, 457 (1894), as follows:

"Where minerals have been found, and the evidence is of such a character that a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine, the requirements of the statute have been met."

In so doing, the Court (197 U.S. at 321, 25 S.Ct. at 470) quoted with approval from United States v. Iron Silver Mining Co., 1888, 128 U.S. 673, 683, 9 S.Ct. 195, 32 L.Ed. 571, where Mr. Justice Field, speaking for the Court said:

"It is not enough that there may have been some indications by outcroppings on the surface, of the existence of lodes or veins of rock in place bearing gold or silver or other metal, to justify their designation as 'known' veins or lodes. To meet that designation the lodes or veins must be clearly ascertained, and be of such extent as to render the land more valuable on that account, and justify their exploitation."

Thus it was made clear as long ago as 1888 that the finding of some mineral, or even of a vein or lode, is not enough to constitute discovery—their extent and value are also to be considered.

The Castle v. Womble definition has been approved by the Supreme Court several times, e. g., Cole v. Ralph, 1920, 252 U.S. 286, 299, 40 S.Ct. 321, 64 L.Ed. 567; Cameron v. United States, 1920, 252 U.S. 450, 459, 40 S.Ct. 410, 64 L.Ed. 659; Best v. Humboldt Placer Mining Co., 1963, 371 U.S. 334, 335–336, 83 S. Ct. 379, 9 L.Ed.2d 350; United States v. Coleman, 1968, 390 U.S. 599, 602, 88 S. Ct. 1327, 20 L.Ed.2d 170. This court has often applied the definition. Lange v. Robinson, 9 Cir., 1906, 148 F. 799, 803; Charlton v. Kelly, 9 Cir., 1907, 156 F. 433, 436, 13 Ann.Cas. 518; Cascaden v. Bortolis, 9 Cir., 1908, 162 F. 267, 268, 15 Ann.Cas. 625; Adams v. United States, 9 Cir., 1963, 318 F.2d 861, 870.

The decisions also make it clear that the standard is more liberally construed in favor of a first locator when the contest is between him and a second locator than in contests between a mineral locator and another party who challenges the mineral nature of the lands. Chrisman v. Miller, supra, 197 U.S. at 323, 25 S.Ct. at 471:

"It is true that, when the controversy is between two mineral claimants, the rule respecting the sufficiency of a discovery of mineral is more liberal than when it is between a mineral claimant and one seeking to make an agricultural entry, for the reason that where land is sought to be taken out

---

2. E. g., Lange v. Robinson, 9 Cir., 1906, 148 F. 799, 803; Cascaden v. Bortolis,

9 Cir., 1908, 162 F. 267, 271, 15 Ann. Cas. 625,

of the category of agricultural lands the evidence of its mineral character should be reasonably clear, while in respect to mineral lands, in a controversy between claimants, the question is simply which is entitled to priority."

See also Lange v. Robinson, supra, 148 F. at 803. No doubt this accounts for the statements to be found in some of the cited cases indicating that, if the locator has found *any* minerals in the rock in place, he has made a discovery. Unless this be the basis for such statements, they are clearly contrary to what the Supreme Court said in Chrisman v. Miller, supra. Therefore, we think that in this contest between Converse and the Forest Service the test should be strictly applied against Converse. Here, the decision does not deprive Converse of his possession or of the right further to explore his claim and make a valid discovery. It protects an important public interest, the right of the government, which still has paramount title, to manage valuable timber on the claims,[3] thus confining Converse to the sole purpose for which he can acquire a valid claim under the mining laws. United States v. Coleman, supra, 390 U.S. at 603, 88 S.Ct. 1327. The Department has long applied the same rule to national forest lands that the court announced in *Chrisman v. Miller* regarding agricultural lands. Helen v. Wells, 1933, 54 I.D. 306; United States v. Dawson, 1944, 58 I.D. 670; United States v. Black, 1957, 64 I.D. 93; United States v. Dodson, 1959, I.D. case No. A–27905; United States v. Amcol Mining & Milling Co., 1960, I.D. case No. A–28405. See also Cameron v. United States, supra, 252 U.S. at 463, 40 S.Ct. at 410; United States v. Lavenson, W.D.Wash., 1913, 206 F. 755, 762–773; United States v. Lillibridge, S.D.Cal., 1932, 4 F.Supp. 204, 206. Some of these cases indicate that the discovery must be of such character as to show that there will be a paying or profitable mine. Here, however, the Secretary did not go so far.

█ In applying the prudent man test, the fact finder can consider whether the claims are in a producing area, are adjacent to or near successful mines, and are of similar character. (Lange v. Robinson, supra, 148 F. at 804; Cascaden v. Bortolis, supra, 162 F. at 269–270). It would seem that, if such facts can be shown in support of an inference that comparatively slight showings on the claim point to a reasonable prospect of success in the development of a valuable mine, then proof of their absence should also be considered as possibly supporting a contrary inference.

Converse attacks the Secretary for drawing a distinction between "exploration," "discovery," and "development." But the authorities we have cited show that there is a difference between "exploration" and "discovery." (See, e. g., Cole v. Ralph, supra, 252 U.S. at 294, 296, 307, 40 S.Ct. 321.) If the latter word were taken literally, then the finding of *any* mineral would be a "discovery." Webster, 2d Ed., defines "discover" as "to make known the identity of, * * * by laying open to view, as a thing hidden or covered, to expose; to disclose; to bring to light." But, as we have seen, that alone is not enough. On the other hand, Webster defines "explore" as "to seek for or after, to strive to attain by search." This is exactly what a prospector does, both before he finds the first "indications * * * of the existence of lodes or veins" (United States v. Iron Silver Mining Co., supra, 128 U.S. at 683, 9 S.Ct. at 199) and thereafter until he finds enough mineralization to meet the legal test of a discovery. It is true that some of the cited cases say that "development" and "exploration" mean the same thing (Charlton v. Kelly, supra, 156 F. at 436), or speak of "exploration" after discovery (Lange v. Robinson, supra, 148 F. at 804). But in each of these cases, the court was talking about further work to be done after a sufficient discovery had been made, work which could be called

---

3. The timber on the Converse claims is valued at more than $90,000.

"exploration" or "further exploration," or could also be called "development." They do not support the attack here made upon the distinction between the exploration work which must necessarily be done before a discovery, and the discovery itself, which is what the Secretary talks about when he distinguishes between "exploration" and "discovery." The real question here is not whether there is such a distinction, but whether Converse's exploration had resulted in a legal discovery.

Finally, United States v. Coleman, supra, 390 U.S. 599, 88 S.Ct. 1327, has significantly tightened the standard of Chrisman v. Miller, supra. *Coleman* involved stone, rather than metallic lodes. The Secretary required a showing that "the mineral can be 'extracted, removed and marketed at a profit'—the so-called 'marketability test' " (390 U.S. at 600, 88 S.Ct. at 1329). This court had disapproved that test as inconsistent with the long standing Chrisman v. Miller "prudent man" test. The Supreme Court reversed. Mr. Justice Black, speaking for a unanimous Court, said:

"Indeed, the marketability test is an admirable effort to identify with greater precision and objectivity the factors relevant to · a determination that a mineral deposit is 'valuable.' It is a logical complement to the 'prudent man test' which the Secretary has been using to interpret the mining laws since 1894."

After restating the prudent man test, he continued:

"Under the mining laws Congress has made public lands available to people for the purpose of mining valuable mineral deposits and not for other purposes. The obvious intent was to reward and encourage the discovery of minerals that are valuable in an economic sense. Minerals which no prudent man will extract because there is no demand for them at a price higher than the cost of extraction and transportation are hardly economically val-

uable. Thus, profitability is an important consideration in applying the prudent-man test, and the marketability test which the Secretary has used here merely recognizes this fact.

"The marketability test also has the advantage of throwing light on a claimant's intention, a matter which is inextricably bound together with valuableness. For evidence that a mineral deposit is not of economic value and cannot in all likelihood be operated at a profit may well suggest that a claimant seeks the land for other purposes.

"Finally, we think that the Court of Appeals' objection to the marketability test on the ground that it involves the imposition of a different and more onerous standard on claims for minerals of widespread occurrence than for rarer minerals which have generally been dealt with under the prudent-man test is unwarranted. As we have pointed out above, the prudent-man test and the marketability test are not distinct standards, but are complementary in that the latter is a refinement of the former. While it is true that the marketability test is usually the critical factor in cases involving non-metallic minerals of widespread occurrence, this is accounted for by the perfectly natural reason that precious metals which are in small supply and for which there is a great demand, sell at a price so high as to leave little room for doubt that they can be extracted and marketed at a profit." (Pp. 602–603, 88 S.Ct. at 1330–1331.)

 We think it clear that the marketability test is applicable to all mining claims. We do not agree with Converse's argument that the last sentence that we have quoted means that marketability has no relevance in a case where the discovery is of precious metals. Such a holding would be contrary to Mr. Justice Field's rationale in United States v. Iron Silver Mining Co., supra, (128 U.S. at 683, 9 S.Ct. 195) and to the

rationale of the prudent man test itself. It, too, concerns itself with whether minerals are "valuable in an economic sense." And that is the way that courts have long interpreted it. That is what Mr. Justice Field was writing about. So was Mr. Justice Brewer in Chrisman v. Miller, supra, (197 U.S. at 322–323, 25 S.Ct. 468). So was Mr. Justice Van Devanter in Cole v. Ralph, supra, (252 U.S. at 299, 40 S.Ct. 321) and in Cameron v. United States, supra, (252 U.S. at 457, 40 S.Ct. 410). So were Judge Gilbert in Charlton v. Kelly, supra, (156 F. at 436–437), Judge Hamley in Adams v. United States, supra, (318 F.2d at 870), and Judge Madden in Mulhern v. Hammitt, 9 Cir., 1964, 326 F.2d 896, all speaking for this court.

■ To us, the cases indicate that the prudent man test, complemented by the marketability test, is to be applied with varying degrees of strictness, depending upon the relative positions of the parties to the case, i. e., against whom and for what purpose the claim of discovery is asserted, e. g., Chrisman v. Miller, supra, and the type of minerals involved, i. e., precious metals, base metals, or minerals of widespread occurrence, e. g., Coleman v. United States, supra, 390 U. S. at 603, 88 S.Ct. 1327. Here we deal with a contest between a locator and the government, which is asserting its interest in managing timber in a national forest, rather than a contest between locators. This factor, we think, calls for a somewhat strict application of the test. As we have noted, the prudent man test has long been strictly applied against one who asserts a discovery on national forest lands, when the contest is between him and the government, as is the case here, e. g., Cameron v. United States, supra. Here, we also deal with a lode claim containing small values in precious metals, but principally base metals, copper, lead, and zinc. This second combination of factors, we think, calls for a somewhat less strict application of the test. We think that in such a case it is still the law that there need not be a full showing of marketability, such as the Secretary required in *Coleman*, supra. But the marketability test does permit the fact finder, even in the case of a showing of gold, to consider, somewhat more extensively than heretofore, the economics of the situation. Perhaps we could phrase the test this way: When the claimed discovery is of a lode or vein bearing one or more of the metals listed in 30 U.S.C. § 23, the fact finder, in applying the prudent man test, may consider evidence as to the cost of extraction and transportation as bearing on whether a person of ordinary prudence would be justified in the further expenditure of his labor and means. But this does not mean that the locator must prove that he will in fact develop a profitable mine.

■ What, then, did the Secretary do? First, he correctly limited the issue—had there been a valid discovery before July 23, 1955? Consequently it was proper to limit the inquiry to what had then been found. See Cole v. Ralph, supra, 252 U.S. at 297–298, 40 S.Ct. 321; Cameron v. United States, supra, 252 U.S. at 456, 40 S.Ct. 410; Palmer v. Dredge Corp., supra, n. 1, 398 F.2d 792. Thus the Hearing Examiner was correct in receiving in evidence samples taken from the areas exposed by Converse before that date, even though the samples were taken thereafter, but excluding evidence relating to areas not then but thereafter exposed, including samples taken from those areas.

■ Second, the Secretary applied a proper test of discovery. The Hearing Examiner expressly followed the prudent man test; he did not purport to apply the marketability test. But he did take into account the economics of the situation. He considered the fact that the claims were first located by Converse's father in or before 1910, were abandoned shortly thereafter, and were not again relocated by Converse until 1951. He considered that the claims are within the Quartzville Mining District of Ore-

gon, from which the only recorded production is of some gold and silver, mostly before 1900, with no production of any minerals since the Second World War, and no recorded production of any base metals at all. He found that the mineralization that Converse and his father had found before the crucial date was slight and insufficient to meet the prudent man test, particularly in the light of the remoteness and inaccessibility of the claim.[4] If this be an application of a marketability test, we think it proper. Converse's father seems to have applied a similar test when he abandoned the claims in 1910. Nor is the finding made improper by the further finding that enough had been found to justify further exploration in the hope of making a legal discovery. As we have seen, this distinction is valid.

On the first appeal, the Assistant Director applied the same test, and expressly recognized that "A valuable mine need not be a profitable one." He added that, "Nevertheless, 'the nucleus of value which sustains a discovery must be such that with actual mining operations under proper management a profitable venture may reasonably be expected to result.'" This expectation we take to be that of the mythical "person of ordinary prudence" postulated in the prudent man test. We note that he did not say proof that the mineral can be extracted at a profit, as in *Coleman*, supra. In the light of *Coleman*, we cannot hold that this test, as applied to this case, is erroneous. See also White v. Udall, 9 Cir., 1968, 404 F.2d 334.

On the second appeal, the Assistant Solicitor applied the same test, and noted the distinction between such a case as this and a contest between rival claimants. Again, we find no error.

Affirmed.

4. This situation changed with the construction of a road by the Forest Service in 1959. It was in areas exposed by that work that additional evidence of mineralization was later found.