**Kenneth ROBERTS et al., Plaintiffs,**

**v.**

**Rogers C. B. MORTON, Secretary of the Interior, Washington, D. C., and The Interior Board of Land Appeals, United States Department of the Interior, Defendants.**

**Civ. A. No. C–5308.**

United States District Court,
D. Colorado.

Jan. 23, 1975.

Clement Theodore Cooper, Washington, D. C., Talmadge, Talmadge, Wallace & Hahn, Denver, Colo., for plaintiffs.

James L. Treece, U. S. Atty., Denver, Colo., by Douglas D. Doane, Asst. U. S. Atty., Gerald Fish, Atty., U. S. Dept. of Justice, Washington, D. C., for defendants.

## OPINION, ORDER AND JUDGMENT

CHILSON, District Judge.

Defendants seek a review of the decision of the Secretary of the Interior, as entered by the Interior Board of Land Appeals (IBLA) [United States v. Merle I. Zweifel, et al., 1 BLA 72–311 (May 29, 1973)] affirming the administrative law judge's holding that plaintiffs' unpatented placer mining claims are null and void. United States v. Merle I. Zweifel et al., Colorado Contest No. 441 (February 25, 1972).

The mining claims in question, the majority of which were located in the Piceance Creek Basin, widely known for its vast oil shale deposits, were filed between May 2, 1966, and February 10, 1967, by Merle I. Zweifel as locator-agent for plaintiffs. The 2,910 claims, covering roughly 400,000 acres, were filed for dawsonite and other alumina-bearing minerals. Alumina is the source of aluminum metal. Opinion of ILBA at pp. 60–62; Opinion of administrative law judge at pp. 1–2.

The decision declaring plaintiffs' mining claims null and void was based on findings (1) that plaintiffs did not sustain their burden of showing a discovery of valuable, locatable, marketable minerals on their claims, 30 U.S.C. §§ 22, 29, 35; and (2) that plaintiffs failed to locate their individual claims in the manner prescribed by statute and the applicable regulations. In addition, the administrative law judge found certain of the claims to be void *ab initio* since some were asserted on lands previously withdrawn from entry for any purpose by Public Land Order 2636, 27 Fed.Reg. 2572 (March 17, 1962), and others were asserted on lands previously patented by the United States without mineral reservation.

Plaintiffs claim that the administrative decision is not supported by substantial evidence; that it was arrived at in an arbitrary, capricious, whimsical and biased manner; that incorrect legal principles were applied by the administrative tribunals; and that the proceedings were conducted so as to deprive plaintiffs of their rights to due process and a meaningful opportunity to be heard.

## I. JURISDICTION

Plaintiffs promise jurisdiction of this action on 5 U.S.C. §§ 702, 704 (Administrative Procedure Act), 28 U.S.C. § 2201 (Declaratory Judgment Act), 28 U.S.C. § 1361, and 28 U.S.C. § 1391 (Venue).

In the pre-trial order entered herein on April 15, 1974, defendants admit jurisdiction under 28 U.S.C. § 1361 but deny plaintiffs' other jurisdictional allegations. Notwithstanding defendants' objections, jurisdiction to review the decision of the IBLA is properly based on 5 U.S.C. §§ 702, 704. Nickol v. United States, 501 F.2d 1389 (10th Cir. 1974). However, jurisdiction may not be based upon 28 U.S.C. § 2201 since the Declaratory Judgment Act is not jurisdictional. Converse v. Udall, 399 F.2d 616, 618 (9th Cir. 1968), cert. denied, 393 U.S. 1025, 89 S.Ct. 635, 21 L.Ed.2d 569 (1969). Nor may jurisdiction be based upon 28 U.S.C. § 1391 which deals only with venue. Converse v. Udall, *supra.*

This case is thus properly before the Court under 5 U.S.C. §§ 702, 704 and 28 U.S.C. § 1361.

## II. PROPRIETY OF SUMMARY JUDGMENT ON REVIEW OF ADMINISTRATIVE RECORD

■ Defendants have filed a motion for summary judgment and a motion for judgment on the pleadings. Since the administrative record comprises "matters outside the pleadings" and has been considered by the Court, the motion for judgment on the pleadings shall be treated as a motion for summary judgment in accordance with Rule 12(c) Federal Rules of Civil Procedure.

The plaintiffs have also filed a motion for summary judgment supported by an affidavit which defendants have moved to strike. In view of the Court's disposition of the motions for summary judgment herein, it is unnecessary to determine defendants' motion to strike.

We now consider the propriety of summary judgment in a review of an administrative record.

In Nickol v. United States, *supra*, a case involving the review of an administrative invalidation of mining claims, the Tenth Circuit Court of Appeals held that a mere order granting or denying summary judgment in cases involving the review of administrative records is inappropriate. This conclusion was based on the Court's observation that the review of a factual record by its very nature involves genuine issues of material fact. Indeed, "a dispute concerning the presence or absence of substantial evidence in a record is itself a genuine issue of material fact, precluding an award of summary judgment." Johnson v. Weinberger, 388 F.Supp. 628, 629 (D.Colo.1974). See Nickol v. United States, *supra*.

However, when asked to review an administrative record to determine whether the decision therein reached is supported by substantial evidence, the Court's review is "confined to the agency record, or such portions of it which the parties may cite, and additional evidence is not to be admitted." Nickol v. United States, *supra*, 501 F.2d at 1390.

■ This Court now has before it the various pleadings, motions and briefs filed by the respective parties and the voluminous administrative record on which the the IBLA based its decision. This is the only pertinent material which the Court may consider on this review; the case is thus ripe for final disposition upon the entry of appropriate findings of fact and conclusions of law by this Court. Nickol v. United States, *supra*, 501 F.2d at 1391; Johnson v. Weinberger, *supra*.

## III. STANDARD OF REVIEW

■ In reviewing a decision of the Secretary of the Interior, as reached by the IBLA, this Court's function is not to weigh the conflicting evidence adduced at the administrative proceedings. Rather, the Court must determine whether, upon the entire administrative record, there is substantial evidence to support the Secretary's decision, and if so, the decision must stand. 5 U.S.C. § 706(2)(E); Nickol v. United States, *supra*; Udall v. Snyder, 405 F.2d 1179, 1180 (10th Cir. 1968); Udall v. Garula, 405 F.2d 1181 (10th Cir. 1968); Converse v. Udall, *supra*; Pan American Petroleum Corp. v. Udall, 352 F.2d 32 (10th Cir. 1965); Henrikson v. Udall, 350 F.2d 949, 950 (9th Cir. 1965).

■ In analyzing the administrative record, the Court must also be persuaded that the Secretary applied the proper legal standards, both substantively and procedurally, and correctly interpreted any applicable rules and regulations in reaching his decision. See generally 5 U.S.C. § 706(2). See Sainberg v. Morton, 363 F.Supp. 1259, 1261 (D.Ariz. 1973) and cases therein cited.

## IV. LEGAL STANDARDS FOR PERFECTING PLACER MINING CLAIMS

■ The United States mining laws permit citizens of the United States to explore, mine and/or purchase "valuable mineral deposits in lands belonging to the United States". 30 U.S.C. § 22.

In order to perfect mining claims on public lands, the claimant must make a discovery, see 30 U.S.C. § 23, of valuable minerals thereon.

■ 30 U.S.C. § 29 provides:

"A patent [1] for any land claimed and located for *valuable [mineral] deposits* may be obtained in the following manner: Any person . . . may file . . . an application for a patent, under oath, . . . , showing accurately the boundaries of the claim or claims, which shall be distinctly marked by monuments on the ground, and shall post a copy of such plat, together with a notice of such application for a patent, in a conspicuous place on the land . . ." (emphasis added)

This same procedure is to be followed in order to obtain patents for placer mining claims such as are involved in this case. 30 U.S.C. § 35.

The statute does not prescribe guidelines for determining when a claim is made to "valuable mineral deposits." However, in a long line of cases, the Secretary of the Interior and the Courts have developed standards, known as the "prudent-man" and "marketability" tests, to be used in assessing the valuableness of mineral claims. As first stated in Castle v. Womble, 19 L.D. 455, 457 (1894),

"[W]here minerals have been found and the evidence is of such a character that a person of ordinary prudence would be justified in the further expenditures of his labor and means, with a reasonable prospect of success, in developing a valuable mine, the requirements of the statute are met."

■ This "prudent-man" standard is supplemented by the so-called "marketability" test. The claimant must show that a man of ordinary prudence could extract and market the claimed minerals at a profit. This requires that there exists, at the time of discovery rather than at some speculative future date, a market for the discovered minerals that is sufficient to attract the efforts of a person of ordinary prudence. See United States v. Zweifel, 508 F.2d 1150, (10th Cir. 1975); Barrows v. Hickel, 447 F.2d 80, 83 (9th Cir. 1971).

In United States v. Coleman, 390 U.S. 599, 602–603, 88 S.Ct. 1327, 1330, 20 L. Ld.2d 170, rehearing denied, 391 U.S. 961, 88 S.Ct. 1834, 20 L.Ed.2d 875 (1968), conformed to, 405 F.2d 72 (9th Cir.), cert. denied, 394 U.S. 907, 89 S.Ct. 1014, 22 L.Ed.2d 217 (1969), the Supreme Court reaffirmed its long held approval of the "prudent-man" test, and also approved the "marketability" test as "an admirable effort to identify with greater precision and objectivity the factors relevant to a determination that a mineral deposit is 'valuable.' "

Plaintiffs argue that the "marketability" test is inapplicable in a case involving so-called "intrinsically valuable" minerals, which are presumed to be valuable. Plaintiffs' brief at pp. 35–36. There is sufficient testimony in the administrative record herein to support the conclusion that alumina qualifies as an intrinsically valuable mineral. (e. g., Tr.[2] 631, 813).

■ The "prudent-man" and "marketability" tests have been held applicable to all mining claims, including those involving precious, intrinsically valuable minerals. Converse v. Udall, *supra*, 399 F.2d at 621–622; Adams v. United States, 318 F.2d 861 (9th Cir. 1963) (gold). Even where a mining claim is based on an intrinsically valuable mineral, the claimant must still show that based on the cost of extraction and transportation, "a person of ordinary prudence would be justified in the fur-

---

1. "A patent is the instrument by which the federal government conveys the legal title to mining claims, subject however, to existing liens, vested and accrued water rights, and conditions imposed by applicable state stat- utes." 54 Am.Jur.2d Mines & Minerals § 81 (footnotes omitted).

2. Administrative Hearing Transcript.

ther expenditure of his labor and means." Converse v. Udall, *supra*, 399 F.2d at 622. Stated another way, the claimant must show that the mineral involved feasibly can be extracted and marketed at a profit. See United States v. Coleman, *supra*.

By applying these tests, defendants applied the proper legal standards for determining plaintiffs' claims. See decision of IBLA, 11 IBLA at 64–72. It remains to be decided whether the conclusions reached in applying these standards are supported by substantial evidence.

## V. EVIDENCE RECEIVED BY THE ADMINISTRATIVE LAW JUDGE

Plaintiffs' claims are based on the presence of alumina, the source compound of aluminum, in the dawsonite-bearing oil shale in the Piceance Creek Basin in Garfield, Moffat, and Rio Blanco counties. In its decision the IBLA commented on the evidence adduced as follows:

"The evidence is not . . . that economically recoverable alumina exists in all oil shale or under all the contested claims. The evidence is that aluminum is an element universally present in the earth's crust. It is found in alumina-bearing compounds throughout the oil shale of the Piceance Creek Basin, but there is no evidence that all of such oil shale, or the shale which is on the claims concerned contains economically recoverable alumina from which aluminum may be commercially extracted.

. . . . . . .

"Appellants made no attempt to pinpoint any claim and assert that it contained economically extractable aluminum by showing reliable evidence as to the cost of extraction and marketing."

11 IBLA at 72, 73. Similarly, the administrative law judge who presided over the original mining contest initiated by the government, Colorado Contest No. 441, found that,

"The uncontroverted testimony is that the aluminum present in the Piceance Creek Basin cannot, by presently known technology, be extracted and marketed on a commercially economic basis, and therefore, the deposits do not meet the test of present marketability required by the mining laws." Opinion of administrative law judge at p. 42.

A review of the evidence and testimony received on the economic feasibility of extracting alumina from the claims in question makes it abundantly clear that defendants' resolution of this issue is supported by substantial evidence.

John Ward Smith, a research chemist for the United States Bureau of Mines familiar with the mineral makeup of the Piceance Creek Basin (Tr. 510) testified on behalf of the government. He testified that while some of the alumina present in samples he tested might be classified as extractable using sophisticated acid treatment methods (Tr. 551), there is no present economically feasible method by which commercial quantities of alumina can be extracted and marketed at a profit. (Tr. 602, 620, 624, 628–29, 640, 652–53, 666–68, Exhibit C–5). Mr. Smith did predict, however, that such a process will probably be developed some day. (Tr. 626, 637–38). He testified that he is an advocate of accelerating the development of this process. (Tr. 638).

The only additional testimony presented on this issue was offered by plaintiffs' witness, Mr. John Stevenson, professor of minerology at McGill University, Montreal, Canada (Tr. 795–96), and an expert in the mineral characteristics of dawsonite, the alumina-bearing substance here in question. (Tr. 797–99). Mr. Stevenson had examined and analyzed several mineral samples taken from the Piceance Creek Basin (Tr. 798) although he was unable to identify the precise location from which the samples were taken. (Tr. 813–814).

After Mr. Stevenson discussed possible methods of extracting alumina from

minerals of the kind found in the Piceance Creek Basin, the administrative law judge asked whether he could testify that any one of these processes could be accomplished economically. Mr. Stevenson replied: "No that is beyond my field. I have read about such things being done, but that is all I know about it." (Tr. 820).

The testimony adduced that alumina could not presently be extracted from the Piceance Creek Basin by economically feasible means was uncontroverted, and is thus sufficient to support the findings of the administrative law judge, the IBLA and the Secretary of the Interior on that issue. See opinion of the IBLA, 11 IBLA at 69.

■ Plaintiffs argue that defendants had the burden of proof on the issue of marketability, did not sustain that burden, and that plaintiffs must therefore prevail. 5 U.S.C. § 556(d) provides that in a hearing conducted pursuant to the Administrative Procedure Act, "the proponent of a rule or order has the burden of proof." Although the government initiated the mining contest in this case, the Courts have held that "the entryman [the mining claimant] is the true proponent of the rule or order" within 5 U.S.C. § 556(d), and that he therefore has the burden of proof. United States v. Springer, 491 F.2d 239, 242 (9th Cir. 1974); Foster v. Seaton, 106 U.S.App. D.C. 253, 271 F.2d 836, 838 (1959). Plaintiffs herein thus had the burden of proof on the marketability issue, and there is substantial evidence in the record that they failed to meet that burden.

The second ground on which the IBLA based its decision was that plaintiffs failed to locate their individual mining claims in compliance with the mining laws. Opinion of the IBLA, 11 IBLA at 74–88. It is unnecessary to dwell at length on this issue because even if plaintiffs properly located and marked their claims, the IBLA decision must stand since, as discussed above, plaintiffs failed to make the required discovery of valuable mineral deposits.

In order validly to locate a mining claim on federal land, the statute merely requires that the "location must be distinctly marked on the ground so that its boundaries can be readily traced." 30 U.S.C. § 28. In addition, the exploration and mining of lands belonging to the United States is to be conducted according to "regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts . . . ." 30 U.S.C. § 22.

43 C.F.R. § 3831 (1973), formerly 43 C.F.R. § 3401.1 (1966), provides in pertinent part:

"A location [of a mineral claim] is made by (a) staking the corners of the claim, except placer claims described by legal subdivisions where State law permits locations without marking the boundaries of the claims on the ground, (b) posting notice of location thereon, and (c) complying with the State laws, regarding the recording of the location in the county recorder's office, discovery work, etc. As supplemental to the United States mining laws there are State statutes relative to location, manner of recording of mining claims, etc., in the State, which should also be observed in the location of mining claims. . . . ."

C.R.S. 92–22–12(2) (1963), the Colorado law "which should be observed in the location of [placer] mining claims" provides:

"(a) Before filing [the] location certificate the discoverer shall locate his claim;

(b) By posting upon such claim a plain sign or notice, containing the name of the claim, the name of the locator, the date of discovery and the number of acres or feet claimed;

(c) By marking the surface boundaries with substantial posts, sunk into the ground, one at each angle of the claim."

The Interior Department has not required strict compliance with State mining location laws in every case. See e.

g., Reins v. Murray, 22 L.D. 409 (1896); Location of Oil Shale Placer Claims, Instructions, 52 L.D. 631 (1929). Nevertheless, substantial or colorable compliance with State requirements such as those in Colorado has been recognized by the Courts as a valid requirement for locating mining claims on federal lands. See United States v. Zweifel, *supra.* See also Creede & Cripple Creek Mining & Milling Co. v. Uinta Tunnel Mining & Transportation Co., 196 U.S. 337, 346, 25 S.Ct. 266, 49 L.Ed. 501 (1905); Saxton v. Perry, 47 Colo. 263, 270–271, 107 P. 281 (1910).

■ There is substantial evidence in the record to support the conclusion that plaintiffs, through their agent Mr. Zweifel, did not comply with the specific location requirements of the Colorado statute, C.R.S. 92–22–12(2) (1963). (Tr. 186–94, 230–32, 243, 328–37, 355 et seq., 453–69, 910–33, 943–45). Moreover, even if strict compliance with the Colorado statute is not required, the same evidence in the record is sufficient to support the conclusion that plaintiffs, through Mr. Zweifel, failed to satisfy the general requirement of 30 U.S.C. § 28 that the "location [of each claim] must be distinctly marked on the ground so that its boundaries can be readily traced."

Thus, the second asserted ground for the IBLA decision is supported by substantial evidence.

## VI. PLAINTIFFS' CLAIM THAT THE ADMINISTRATIVE PROCEEDINGS WERE UNFAIR

In their amended complaint filed September 13, 1973, and in the pre-trial order entered on April 15, 1974, plaintiffs attack the manner in which the administrative proceedings were conducted on a variety of procedural grounds, and on constitutional due process grounds. Specifically, as to procedure, plaintiffs attack the administrative law judge's refusal to grant plaintiffs' motion to dismiss, his refusal to direct a prehearing conference, his refusal to accept some or all of plaintiffs' proposed findings of fact and conclusions of law, and his refusal to grant plaintiffs' motion for severance. On due process grounds, plaintiffs claim that they were deprived of property without due process of law and without just compensation; that they could not receive a fair hearing due to adverse prehearing publicity, and that their motion to suspend the proceedings should have been granted. In addition, plaintiffs claim that the administrative law judge was biased against plaintiffs due to his position as employee of the Interior Department, and that the administrative contest was an unlawful attempt by the Interior Department to wipe out plaintiffs' claims in order to make way for the substantial United States oil shale leasing program in the Piceance Creek Basin.

To dispose of these multiple claims, it is sufficient to state that they are not supported by the administrative record in this case. In commenting upon plaintiffs' allegation of adverse prehearing publicity, pressed during the administrative appeal as were all of the allegations here being considered, the IBLA stated,

"Appellants contend that before the contest proceeding the Department of the Interior issued a number of statements to the news media implying that judgment had already been passed on the validity of the claims. Although appellants have made general allegations of adverse prehearing publicity; they have failed to present any persuasive evidence that there was any unfairness in the contest proceeding itself. . . ."

Opinion of the IBLA, 11 IBLA at 94.

■ The administrative record herein amply supports the correctness of the foregoing comment by the IBLA, both as it relates to plaintiffs' adverse prehearing publicity claim and as it relates to plaintiffs' various additional procedural and due process claims. There was no apparent unfairness in the proceedings. The administrative law judge's rulings, challenged by plaintiffs, were reasonable and fairly reached, and

plaintiffs' rights to a fair hearing were adequately safeguarded.

For the reasons stated in this opinion,

It is ordered, adjudged and decreed that the decision of the Interior Board of Land Appeals acting pursuant to the authority delegated to it by the Secretary of the Interior, is hereby affirmed and judgment of dismissal with prejudice of this action by the plaintiffs is hereby entered.