Robert B. LARA, Plaintiff,

v.

The SECRETARY OF the INTERIOR OF the UNITED STATES of America, Defendant.

No. CV 84–1272–PA.

United States District Court, D. Oregon.

May 1, 1986.

Richard F. Lancefield, Portland, Or., for plaintiff.

Charles H. Turner, U.S. Atty., James L. Sutherland, Asst. U.S. Atty., Eugene, Or., for defendant.

## OPINION

PANNER, Chief Judge.

Plaintiff Robert Lara seeks judicial review of administrative proceedings that invalidated his three placer mining claims. Defendant Secretary of the Interior counterclaims, seeking an order that plaintiff vacate the claims and remove structures on them by a certain date. I affirm the Secretary's decision, and grant the relief requested by the Secretary in his counterclaim.

## FACTUAL BACKGROUND

Placer mines are superficial deposits of ore that have been eroded from a vein or lode and washed downstream. The deposits are in a loose state, and are often recovered by dredging a stream bed or digging up material from a riverbank and sluicing gravel and other material away from the mineral.

The placer claims here are all located in the Rogue River National Forest. Two of the claims, Madeline No. 1 and Madeline No. 2, are located in Oregon along the Applegate River. The other claim, Sunshine, is in northern California along Elliot Creek, a tributary of the Applegate. A considerable amount of gold has been taken from the Applegate and its tributaries, but there has been no prior history of gold production from these claims.

The Madeline and Sunshine claims were first located in the early 1930's. Lara purchased the Madeline claims in 1971 and the Sunshine claim in 1975, from private persons.

Lara does not make his living by mining. At the time of the hearing, he lived near the Sunshine claim on patented mining land that he bought in 1975. This land is not the subject of this action. A cabin is on the Sunshine claim, however, and another is on one of the Madeline claims. A greenhouse stands on the other Madeline claim. At the time of one of the hearings, both cabins were occupied by persons Lara describes as caretakers. One of the caretakers is Lara's son. Lara lived in his son's cabin before this. The Sunshine cabin was rented for some time to another person. Mining activities on the claims by Lara and his predecessors appear to have been limited and irregular.

In 1973, the Forest Service published notice in the Federal Register of a proposed withdrawal of the lands on which the Madeline claims are located. A Forest Service campground adjoins the Madeline claims, and the Forest Service sought to enlarge the campground onto the claims. In 1971, the Sunshine claim was also withdrawn from the federal mining lands.

In 1977 and 1979, Paul Boswell, a Forest Service mining engineer, tested material from all three claims. He concluded that a mineral discovery existed in the southwest corner of the Sunshine claim, but not in the northern half. Boswell also concluded that the Madeline claims did not contain a mineral discovery.

## PROCEDURAL BACKGROUND

In 1978, the Forest Service filed administrative complaints contesting the validity of the three claims. The complaints alleged that sufficient minerals did not exist to constitute a discovery, and that the claims were being used for "other than bona fide mining purposes." As to the Madeline claims, the Forest Service also alleged that Lara had failed to comply with annual assessment requirements.

Hearings were held in 1979 before an administrative law judge (ALJ) in Sacramento and Portland.* In 1980, the ALJ

---

* Judicial review of this case has been complicated by inadequate pagination of the record, which is 400 pages long. Because of the multiple hearings in this case, there are several transcripts. Each is separately paginated. In attempting to identify which transcript is being cited, the ALJ and IBLA have each used their own numbering systems. Plaintiff uses a third system. Many of the page citations appear inaccurate as a result.

issued an opinion finding that the Madeline claims were invalid. The ALJ reached only the first issue in the complaint, holding that the claims were invalid because they lacked a valid discovery. He did not decide whether the claims were being used for other purposes or whether assessment requirements were violated.

The ALJ also found that the northern half of the Sunshine claim was invalid, because it was nonmineral in character and severable from the rest of the claim under the Ten Acre Rule. The ALJ dismissed the complaint as to the southernmost ten acres, finding that the Forest Service had not made a prima facie case that this part of the claim lacked a discovery. The ALJ did not decide whether the claim was being used for other purposes.

Lara appealed to the Department of the Interior's Interior Board of Land Appeals (IBLA). In 1982, the IBLA issued an opinion affirming the ALJ. *United States v. Lara*, 67 IBLA 48 (1982). Lara moved for reconsideration, arguing the northern half of the Sunshine claim was not invalid. The IBLA agreed to hear the motion, but affirmed its earlier decision, with slight modifications. 80 IBLA 215 (1984). In the second opinion, the IBLA drew a new dividing line between the valid and invalid portions of the Sunshine claim.

Plaintiff then brought this action for judicial review, pursuant to 28 U.S.C. § 1331(a). The Secretary filed a counterclaim, seeking an order that Lara vacate the claims and remove all structures on them. I affirm and grant the relief requested in the counterclaim.

## STANDARD OF REVIEW

█ Judicial review of IBLA decisions is limited to whether they are arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or not in accordance with the law. *Dredge Corp. v. Conn,*

733 F.2d 704, 707 (9th Cir.1984). The court may not substitute its judgment for that of the IBLA. *Baker v. United States,* 613 F.2d 224, 226 (9th Cir.1980).

## DISCUSSION

I. *The Madeline Claims.*

Lara argues that the ALJ and IBLA applied the wrong legal standards, and that their opinions are not supported by substantial evidence. Lara requests that I remand the action for further testing of the Madeline claims.

A. *Legal Standards—Success and Profitability.*

█ When the Government contests a mining claim, it bears the initial burden of presenting a prima facie case that the claim is invalid. To meet this burden, the Government must present sufficient evidence that there was no discovery of a "valuable mineral deposit" under 30 U.S.C. § 22. The burden then shifts to the claimant to show by a preponderance of the evidence that a valuable mineral deposit has been discovered. *Rodgers v. Watt,* 726 F.2d 1376, 1380 (9th Cir.1984).

█ When a claim is on land that is later withdrawn from appropriation, the claim must be supported by a discovery at the date of the withdrawal, as well as the date of the hearing. *Rodgers,* 726 F.2d at 1379; *United States v. Forsythe,* 15 IBLA 43 (1974). If there is no discovery as of the date of withdrawal, the IBLA has held that the ALJ need not examine whether there was a discovery at the date of the hearing. *United States v. Rogers,* 32 IBLA 77, 84 (1977).

Lara argues that the IBLA incorrectly assumed he needed to establish profitable production to have made a discovery prior to the discovery date. I disagree. The

The Government has a duty to provide an adequate record that allows for meaningful review. Should plaintiff appeal this ruling, the Government shall consecutively paginate the entire record, from beginning to end. All parties shall cite to the new page numbers in their briefs. The Government shall also provide unofficial revised versions of the ALJ and IBLA opinions. The revised versions shall also use the new page numbers in citations.

ALJ and IBLA applied the proper legal standards.

The ALJ applied the prudent man test, under which a discovery exists only "where the minerals found are of such a character that a person of ordinary prudence would be justified in further expenditure of his labor and means with a reasonable prospect of success in developing a valuable mine." ALJ Opinion at 6. Relying on the Supreme Court's language in *United States v. Coleman*, 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968), the ALJ held that the prudent person test "require[s] a showing of marketability; that is, a showing that the mineral can be presently extracted, removed, and marketed at a profit." ALJ Opinion at 6. The IBLA applied a similar standard. Lara apparently argues this standard is incorrect.

Lara cites *Converse v. Udall*, 399 F.2d 616, 622 (9th Cir.1968), *cert. denied*, 393 U.S. 1025, 89 S.Ct. 635, 21 L.Ed.2d 569 (1969), decided after the Supreme Court's decision in *Coleman*. *Coleman* dealt with placer claims for sand and gravel, common minerals for which a showing of marketability is vital to the claim. *Converse* dealt with a lode claim for principally base metals and small amounts of precious metals, all listed as valuable minerals in 30 U.S.C. § 23. The *Converse* court felt these distinctions warranted a more liberal application of the marketability test.

Under this more liberal test, there "need not be a full showing of marketability," as in *Coleman*. The "economics of the situation," such as the cost of extraction and transportation, may be considered, but "this does not mean that the locator must prove that he will in fact develop a profitable mine." 399 F.2d at 622.

The tests mandated in *Coleman* and *Converse* are difficult to reconcile. The "prudent person" test appears to require only a reasonable prospect of profits, while the marketability test appears to require a certain prospect of profits based on present market figures. Presented with this conflict, the Court in *Coleman* opted for a present showing of profits. In *Converse*,

the Circuit attempted to explain this conflict. While *Converse* might be partially justified by fluctuating market prices in precious metals and stones, the resulting test is difficult to apply.

It is questionable whether the vague, sliding scale marketability test in *Converse* is good law. In *Rodgers v. Watt, supra*, the Ninth Circuit reversed an IBLA decision invalidating a sunstone claim. The court reasoned that the Government had failed to make a prima facie case, the key element of which was a showing that the market for the discovered material is "not sufficiently profitable to attract the efforts of a person of ordinary prudence." 726 F.2d at 1380. Sunstones, while not specifically listed as valuable minerals in 30 U.S.C. § 23, are semi-precious stones that are much different than sand or gravel. Nevertheless, the *Rodgers* court cited the marketability test used in the sand and gravel cases without mention of *Converse* or the character of the mineral involved. While the *Rodgers* court did not need to reach these issues, the case illustrates the difficulty in applying *Converse*.

■ Even if *Converse* is good law and even if the ALJ and IBLA applied a slightly different test than that used in *Converse*, the evidence and findings here would satisfy *Converse*. The ALJ found that the gravel deposits on the claims had been worked before and whatever gold that existed had been extracted. Boswell found negligible gold values. Lara failed to produce any documented evidence of his gold recoveries, and conceded that he had done little work and recovered little gold over the years. ALJ Opinion at 7. The ALJ and IBLA findings would satisfy the requirements of *Converse*.

Lara also cites *Adams v. United States*, 318 F.2d 861 (9th Cir.1963), a placer gold case decided before *Coleman* and *Converse*. There, the court stated that a claim locator need not show a "proved ability to mine the deposit at a profit" in order to show that a mineral deposit was valuable. 318 F.2d at 870. The court also stated, however, that while proof of "assured prof-

its" was not required, the locator still needed to show that a person of ordinary prudence would "expend substantial sums in the expectation that a profitable mine might be developed." *Id.*

The ALJ found that the Madeline claims did not "contain mineral deposits which would encourage a prudent person to further expend labor and means in developing such claims with the expectation of establishing a profitable mine." ALJ Opinion at 7. The ALJ's findings do not conflict with *Adams.*

Lara cites language in *Verrue v. United States,* 457 F.2d 1202, 1205 (9th Cir.1972), that "actual successful exploitation of a mining claim is not required to satisfy the 'prudent person test.'" *Verrue,* a sand and gravel case, did not hold that success was irrelevant. *Verrue* held that the claimant need not rely solely on his own successful marketing to prove marketability, but could rely on the successful marketing of others. *Melluzzo v. Morton,* 534 F.2d 860, 862–63 (9th Cir.1976).

■ The cite from *Verrue* does not apply in this context. Moreover, while actual proof of success may not be required, a reasonable expectation of it is. The record and the ALJ's findings do not support such an expectation.

B. *Substantial Evidence.*

Lara contends the agency decisions are not supported by substantial evidence. His primary arguments are that government testing was incomplete, and that he made a valid discovery in 1971.

The IBLA has held that a prima facie case of nondiscovery is made where a Government mineral examiner testifies that he has examined a claim and found the mineral values insufficient to support a discovery. *United States v. Hess,* 46 IBLA 1 (1980).

Boswell took a number of samples from the claims, digging to bedrock in 1977 with shovel and again in 1979 with a small backhoe. Concentrates from these samples were sent to the Union Assay Office for testing to determine the amount of gold in the sample material. A geophysicist aided Boswell in calculating the amount of gravel on the Madeline claims, so that total gold value could be calculated. Boswell's opinion was that the claims could not have been mined profitably in 1972 or at the time of the hearing. Boswell calculated the 1972 estimates by extrapolating back from the 1977 and 1979 data.

Boswell tested material from the riverbank. Lara argues that Boswell should also have tested riverbed materials, as these would be replenished each year with gold washed downstream. Boswell took his samples, however, from riverbank bench gravels that were subject to annual flooding. The riverbed also contained a limited amount of gravel. 67 IBLA at 55–56.

■ The Government made a prima facie case of nondiscovery prior to withdrawal. The burden thus shifted to Lara to show by a preponderance that he made a discovery prior to withdrawal. Lara failed to meet this burden.

■ Lara argues that he made a discovery in 1971. The only evidence supporting this is Lara's testimony at the second hearing. Lara testified that he worked the claims about half-time during the summer of 1971. He estimated that he took an ounce of gold from the Madeline claims that summer. This testimony is insufficient to overcome Boswell's 1977 and 1979 tests, which were extrapolated back to a time prior to the 1973 withdrawal.

Lara failed to show by a preponderance of the evidence that he made a discovery prior to withdrawal. Thus I need not decide whether any subsequent discoveries occurred. The IBLA's decision as to the Madeline claims is supported by substantial evidence.

II. *Sunshine Claim.*

Lara argues that the ALJ and IBLA decisions invalidating the claim to the northernmost ten acres were factually incorrect,

and violated both substantive law and procedural due process.

## A. *Legal Basis for Ten Acre Rule.*

Lara argues that the ALJ and the IBLA should not have applied the Ten Acre Rule to his claim. Lara recognizes that the rule applies to association placer claims, but argues that the rule should not apply to individual placer claims.

■ An association placer claim occurs where two or more persons, or "associations" of persons, make a joint entry of their contiguous claims. Like all placer claims, association claims are located on legal subdivisions of forty acres, which may be subdivided into ten acre tracts. An association claim may combine contiguous claims of less than ten acres. 30 U.S.C. § 36. An individual claim is held by an individual, and not in association with anyone else.

■ The Ten Acre Rule is an administrative policy requiring that each ten acre subdivision of a claim be mineral in character. *McCall v. Andrus*, 628 F.2d 1185, 1187 (9th Cir.1980), *cert. denied*, 450 U.S. 996, 101 S.Ct. 1700, 68 L.Ed.2d 197 (1981). Lara contends that the rule has thus far been applied only to association placer claims larger than twenty acres. Even if this is true, I see no reason why the rule should not be extended to the present case. The policy behind the rule is the same: to limit nonmineral land in placer claims, and thereby free up the land for other purposes or even other miners.

■ Lara also contends that the agency action below violates 30 U.S.C. § 35, which provides for similar treatment of lode and placer claims. Lara contends that under 30 U.S.C. § 23, an individual may locate a lode claim of twenty acres. A discovery within the claim would justify patenting the entire twenty acres, Lara contends, even though it is understood that the area surrounding the lode is not expected to be mineral in character.

The lode claim statute makes no reference to a twenty acre minimum. 30 U.S.C. § 23 provides for limits on the size of lode claims. These limits are measured along the length of the lode and extending from the side of the lode. These dimensions do not appear to apply to placer claims, and Lara makes no argument that they do. I find no authority for Lara's argument that the similar treatment provision in 30 U.S.C. § 35 was violated by applying the Ten Acre Rule here.

## B. *The Line Drawn by the IBLA.*

■ Lara also challenges the line drawn by the IBLA to separate the valid and invalid portions of the claim. Lara argues that the IBLA's line should not have been drawn diagonally across the public land subdivision lines. Public land survey subdivisions are forty acre rectangles that run north to south. They can be divided into four ten acre squares by center lines running east to west and north to south. The IBLA's line across the Sunshine claim runs southwest to northeast.

The IBLA's line appears warranted by the circumstances here. The Sunshine claim is a twenty acre rectangle that lies diagonal to the subdivision lines, running southeast to northwest. As the IBLA noted, this is contrary to 30 U.S.C. § 35, which provides that placer claims should conform "as near as practicable" to public land survey subdivisions.

The IBLA reasoned that in applying the Ten Acre Rule, each claim must be subdivided along the axis on which it was laid out. In an attempt to conform the claim to the shapes used by the survey, the IBLA divided the claim into parcels that were as square as possible. While this resulted in a claim that did not lie in directional conformity with the survey, the IBLA believed this problem could be corrected by a mineral survey in the event Lara applied for a patent. *See* 80 IBLA at 216 n. 1.

Lara argues that the IBLA's line drawing here is unprecedented. He does not cite authority that the line is illegal. I defer to the agency's expertise, and find the line was proper. The IBLA's decision

again appears to foster the policy of eliminating nonmineral land from placer claims.

## C. *Procedural Due Process.*

Lara contends his procedural due process rights were violated because the complaint did not indicate that only portions of the claim were nonmineral, and that other portions could be invalidated under the Ten Acre Rule. Lara argues his property was taken without adequate prior notice of the charges against the claim.

 Due process requires that both notice and an opportunity to be heard are given at a meaningful time and in a meaningful manner. *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972); *see also Morgan v. United States,* 304 U.S. 1, 14–18, 58 S.Ct. 773, 774–776, 82 L.Ed. 1129 (1938) (quasi-judicial administrative hearings affecting due process interests must be fair and open, including the right to be notified of claims of opposing party and the right to meet those claims and present evidence). These requirements were met here.

 The complaint contends that the claim is not supported by a valid discovery, but does not indicate that the Government might challenge only a portion of the claim. At the July 1979 hearing, however, the ALJ noted that the Government's position at the hearing was that the Ten Acre Rule applied to the northern half of the claim. The ALJ agreed that the Ten Acre Rule could invalidate the northern half. Lara was not present at this hearing, but his attorney was. When the attorney argued that the rule applied only to association placers, the ALJ disagreed and gave the attorney the opportunity to brief the issue.

A second hearing was held in October 1979, so that Lara could testify. There was adequate time between the two hearings to prepare argument and evidence on this issue. Lara could also have moved to reopen discovery if necessary. I agree with the IBLA that while the Forest Service attorney engaged in sloppy practice by failing to amend the complaint, the minimum requirements of due process were nonetheless met. 67 IBLA at 50–52. *See also* Fed.R.Civ.R. 15(b) (allowing amendments to pleadings to conform to the evidence when issues not raised by the pleadings are tried by express or implied consent of the parties).

## D. *Substantial Evidence.*

 Lara also argues that the ALJ and IBLA decisions are factually incorrect. The issue here is whether the decisions were supported by substantial evidence.

I agree with the IBLA that the Government made a prima facie case that the northernmost ten acres lacked a discovery and were nonmineral in character. Boswell's tests support this result. Exs. 9, 10. Lara failed to overcome this showing.

Lara argues that Boswell did not anticipate that the agency would divide the claim the way it did. Boswell tested the gravel deposits at the southwest and northwest corners of the claim in 1977. He did not find enough gold in either location to support a discovery. In 1979, at Lara's request, Boswell tested again, this time only on the southwest corner. He found gold supporting a discovery. Lara argues that Boswell did not test the northwest corner a second time because he assumed the agency would allow a long gulch claim along Elliot Creek, and would only invalidate the flat areas above the stream level gravel deposits. While there is some very limited evidence that raises a question on this point, Lara still fails to point to evidence that rebuts the 1977 tests of the northwest gravel deposits, which found insufficient gold. The IBLA examined this issue at length in its second opinion, and I agree with its conclusion. *See* 80 IBLA at 218–20.

The IBLA's decision as to the Sunshine claim is supported by substantial evidence.

## III. *Government Counterclaim.*

 The Government moves for an order that plaintiff vacate the claims and remove all structure and possessions. Such an order is proper. *United States v.*

*Smith Christian Mining Enterprises,* 537 F.Supp. 57 (D.Or.1981). Lara shall vacate the premises within 120 days of the date of this order, or the buildings and other items on the claims shall revert to the United States.

## CONCLUSION

The IBLA's decisions are affirmed. Plaintiff shall vacate the invalidated claims and remove all structures and possessions within 120 days of the date of this opinion.