UNITED STATES of America, Plaintiff,

v.

SMITH CHRISTIAN MINING ENTERPRISES, INC., Smith Enterprises, Inc.; William J. Smith, Sr.; William J. Smith, Jr.; Emma R. Smith; Jane E. Smith; David L. Smith; Aiden F. Smith; [Milo G. Smith]; Keith L. Smith; and Elnora A. Smith, Defendants.

Civ. No. 80–1079–RE.

United States District Court, D. Oregon.

Dec. 15, 1981.

Sidney A. Lezak, U. S. Atty., Thomas C. Lee, Asst. U. S. Atty., Portland, Or., for plaintiff.

W. Dean Fitzwater, James R. Cartwright, Portland, Or., for defendants.

REDDEN, Judge:

The United States brings this action against individual and corporate defendants to enjoin their allegedly unlawful use of Forest Service lands. The amended complaint alleges that the defendants have filed spurious mining claims and unlawfully reside, conduct operations and place structures on Forest Service lands. The defendants have counterclaimed against the United States. They seek a judgment declaring their claims valid and enjoining the United States from further interference with their mining activities.

The United States moves for the entry of summary judgment in its favor on Counts I and II, and entry of partial summary judgment on Counts III and V. The United States also moves to dismiss Counterclaim I.

COUNTS I and II

The United States moves for entry of summary judgment in Counts I and II and entry of an order directing the defendants to vacate the lands claimed through the location notices identified as Blue Mountain Nos. 14–27. The Interior Board of Land Appeals (BLA) affirmed a ruling by the Bureau of Land Management, United States Department of Interior (BLM) that these mining claims were void because they were filed on areas previously withdrawn from entry. *William J. Smith, Sr., et al.,* 33 IBLA 47 (1977). The United States argues that the BLA ruling is final and may not be disturbed. The defendants argue that they are entitled to judicial review of the BLA decision. The defendants contend that the BLA decision was erroneous.

1. *Availability of Judicial Review*

The BLA ruling was in November of 1977. The defendants did not seek judicial review. This case was filed on November 20, 1980. On April 3, 1981, I ruled that the BLA decision had a res judicata effect in this court concerning the validity of the claims.

On September 8, 1981 the Ninth Circuit decided *United States v. Webb,* 655 F.2d 977 (9th Cir. 1981). In *Webb,* as here, the United States brought an action for ejectment against a defendant who claimed under the federal mining laws. In 1970 the BLA decision, affirming the BLM's ruling that Webb's claims were null and void, became final. The United States brought an action for ejectment against Webb and in 1979 Webb moved to amend his answer to seek judicial review of the BLA decision. In reversing the trial judge's denial of the motion to amend, the Ninth Circuit stated:

> There is no statute of limitations for judicial review of an administrative decision by the BLA. Thus, a BLA decision is ordinarily reviewable in a subsequent action for ejectment regardless of how much time has elapsed. *See Coleman v. United States,* 363 F.2d 190, (9th Cir. 1960) *rev'd on other grounds,* 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968). The broad rule that judicial review of BLA decisions is available without regard to passage of time is subject, however, to the rules of pleading which the Federal Rules of Civil Procedure impose upon all

parties, and to the general principles of estoppel.

655 F.2d at 979.

In light of *Webb*, I withdraw my ruling of April 13, 1981, that the decision of the BLA is res judicata in this court. I instead conclude that the defendants are entitled to judicial review of the decision of the BLA with regard to the claims identified as Blue Mountain Nos. 14–27. I reject the government's argument that because the BLA decision became final on November 25, 1977, and the defendants neither quitted the land nor sought review of the decision, they are now estopped from challenging the validity of the BLA decision. There are no facts alleged which set forth the elements of estoppel.

### 2. *Judicial Review of the BLA Decision*

The decision of the BLA is binding on this court if it is supported by substantial evidence, *Henrikson v. Udall*, 350 F.2d 949, 959 (9th Cir. 1965), and if the correct standard of law was applied. *See Funderberg v. Udall*, 396 F.2d 638, 640 (9th Cir. 1968). My review "is confined to the agency record or such portions of it which the parties may cite, and additional evidence is not to be admitted." *Roberts v. Morton*, 549 F.2d 158, 162 (10th Cir. 1975); *Nickol v. United States*, 501 F.2d 1389, 1390 (10th Cir. 1974).

The BLM decision declared portions of the Blue Mountain claims Nos. 14–17, 19, 21–25 and 27 null and void *ab initio* and the entirety of Blue Mountain claims Nos. 18, 20 and 26 null and void *ab initio* because they were located on lands not subject to mineral entry at the time of their location. The BLA affirmed the BLM decision on the ground that the claims were located on land which had been withdrawn from mineral entry at the time of their location.

On August 3, 1973 the Department of Agriculture filed application OR 11158 for withdrawal of the subject lands from appropriation under the mining laws. The application was noted in BLM records on August 27, 1973. A letter listing additional lands was received on August 27, 1974 and was noted in the records on August 29,

1974. Notice of the proposed withdrawal and reservation for recreation and roadside and stream management was published in 40 F.R. 19501 (May 5, 1975). The placer mining claims at issue were located by the defendants (except Elenora Smith) on various dates between October 16, 1974 and October 28, 1974. The defendants do not dispute these facts.

Defendants argue that this court should review: (1) whether the defendants had a valid discovery before the application for withdrawal, (2) the negotiations between the defendants and the Forest Service in 1975 which led the defendants to believe that their claims would be excluded from the proposed withdrawal, (3) whether the Forest Service abused its discretion in applying for the withdrawal, (4) the authority of the Forest Service to make a permanent withdrawal of the land, (5) the evidence and law relied on by the BLA and (6) new evidence of the defendants' latest discoveries of valuable minerals.

As stated above, my review of the BLA decision is confined to a review of the record which was before the BLA. For that reason, I decline to rule on defendants' issues (1), (2) and (6). Issue (2) is essentially an estoppel issue and the defendants have not alleged or shown by affidavit that there is a material issue of fact with regard to their estoppel argument, as required by Rule 56 of the Federal Rules of Civil Procedure. In order to apply equitable estoppel against the government, there are five elements which must be proved. *See TRW, Inc. v. F.T.C.*, 647 F.2d 942 (9th Cir. 1981). The defendants' affidavits do not set forth facts sufficient to establish those elements or to create a material issue of fact.

With regard to issue (3), I conclude that the agency did not abuse its authority in applying for the withdrawal. The agency had the authority to apply for a withdrawal, *see Canon, et al. v. Andrus*, Civil No. S–78–51, memo. op. at 4–7 (E.D. Cal. January 31, 1979). The regulations appear to have been fully complied with.

■ Issue (4) is not yet ripe. The court cannot review the agency's actual withdrawal of the land because the land has not yet been withdrawn. The application for withdrawal has been filed with the result that the land is segregated, but the application has not yet been processed and therefore the Secretary's action in withdrawing the land cannot be reviewed. The Federal Land Policy and Management Act of 1976, 43 U.S.C. § 1714 provides that applications for withdrawal filed before 1976 shall be processed and adjudicated to conclusion within fifteen years. The fifteen years have not yet run.

■ Issue (5) must be decided in favor of the government. The BLA applied the correct law to the evidence. It is clear and the defendants do not dispute that the defendants recorded their claim locations in October 1974 after the August 1974 notation in the BLM's official records of the Agriculture Department's request for withdrawal. A mining claim is properly declared void *ab initio* when it is located on land which at the date of location was included in an application for withdrawal which had been noted on the land office records. *Canon, et al. v. Andrus* at 7, *citing John Boyd Parsons*, 22 IBLA 328 (1975).

I conclude that the BLA decision is correct and is supported by substantial evidence.

## COUNT III and COUNTERCLAIM I

The United States moves for partial summary judgment on Count III and moves to dismiss Counterclaim I. These motions require judicial review of a decision of the BLA, affirming the BLM's ruling that certain of the defendants' claims were void for lack of valuable mineral discovery.

Count III of the amended complaint alleges that some of the defendants filed thirty notices of location of placer mining claims, identified as Blue Mountain Nos. 4–11, Lucky 7 Nos. 1–14 and Big Bear Nos. 1–6. The complaint also alleges the following: the BLM found the claims null and void for lack of valuable mineral discovery thereon; that the BLA affirmed the decision on April 6, 1981; the defendants constructed improvements on the land without Forest Service permits and by continuing to occupy, construct and maintain cabins and improvements of the lands without permit, the defendants are in continuing violation of 36 C.F.R. 261.10(a) and (b) and 16 U.S.C. 551.

Counterclaim I alleges that the defendants are entitled to use the land for mining because the discoveries at issue are valuable mineral discoveries within the meaning of the United States mining laws and because the defendants have used the land only for mining operations and the uses incident thereto. The defendants allege that the order of the BLA declaring the claims null and void is invalid because the wrong legal standard was used and the decision is not supported by substantial evidence.

The United States seeks entry of an order that the defendants vacate the claims and remove their structures and possessions by a specified date; that the United States be authorized to remove the defendants, their structures and possessions from the lands on that date and that the United States be awarded expenses incurred in removing the structures and possessions. The damages are to be determined at a later date.

### 1. *The Legal Standard*

■ The defendants argue that the Interior Department erroneously used the "marketability test" in evaluating the defendants' discovery.

The traditional test applied in evaluating a mining claim is the "prudent man test" set forth in *Castle v. Womble*, 19 L.D. 455, 457 (1894). The prudent man test determines that there is a valuable discovery where:

Minerals have been found and the evidence is of such a character that a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine.

This test has been approved many times by the Supreme Court, *e.g., Best v. Humboldt Placer Mining Co.*, 371 U.S. 334, 83 S.Ct.

379, 9 L.Ed.2d 350 (1963) and by the Ninth Circuit, *e.g., Rawls v. United States,* 566 F.2d 1373 (9th Cir. 1978); *Converse v. Udall,* 399 F.2d 616, 619 (9th Cir. 1968).

In *United States v. Coleman,* the Supreme Court supplemented the prudent man test with the marketability test. 390 U.S. 599, 602, 88 S.Ct. 1327, 1330, 20 L.Ed.2d 170 (1968). The marketability test requires a showing that the mineral "can be extracted, removed and marketed at a profit." 390 U.S. 600, 88 S.Ct. 1327, 20 L.Ed.2d 170. Writing for a unanimous court, Justice Blackmun wrote that the marketability test is

> a logical complement to the prudent man test. . . . Minerals which no prudent man will extract because there is no demand for them at a price higher than the cost of extraction and transportation are hardly economically valuable. Thus, profitability is an important consideration in applying the prudent man test and the marketability test which the Secretary has used here merely recognizes this fact.

390 U.S. at 602–603, 88 S.Ct. at 1330–31. In *Converse v. Udall,* 399 F.2d at 621, the Ninth Circuit held that "the marketability test is applicable to all mining claims." The Court went on to note that where, as in *Converse* and the claims at issue, the contest is between a locator and the government asserting its right to manage the national forest, the prudent man test, complemented by the marketability test is to be applied strictly. *Id.* at 622.

The ALJ set forth the prudent man test as defined in *Castle v. Womble, supra.* The ALJ correctly applied the appropriate standard to the facts. He determined that the contestees, the defendants here, had not shown that a valuable discovery of minerals had been made. That determination was based on the conclusion that the assays submitted by the contestees were not representative of the mineral value of the claims and the fact that Smith, Sr. had not yet sold any minerals from the claim. The ALJ applied the correct standard of law in applying the marketability test which has been explicitly approved by this circuit.

The BLA adopted the decision of the ALJ and therefore, similarly, used the correct legal standard.

*2. Substantial Evidence*

■ The ALJ found that the government had established a prima facie case of no discovery and that the contestees had failed to show, by a preponderance of the evidence, the discovery of a valuable mineral deposit within the limits of any of the contested claims. The defendants argue that there was not substantial evidence to support the finding that the government established a prima facie case of no discovery.

> Substantial evidence is
>
> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. *NLRB v. Nevada Consolidated Copper Corp.,* 316 U.S. 105, 106 [62 S.Ct. 960, 961, 86 L.Ed. 1305] . . ."

*Consolo v. Federal Maritime Commission,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966).

The evidence relied upon by the ALJ included the following: Roger Minnich, a geologist and mining engineer for the Forest Service was a witness. He testified that he had examined the claims in 1975, 1976 and 1977. He also testified to the following: He took several samples with a gold pan from below the soil and didn't see any visible gold. He and Milvoy Suchy, a mining engineer for the Forest Service, took plastic bags full of material from a spot pointed out by Smith, Sr. and the resulting assay showed no platinum, zinc or silver and .005 ounces of gold per ton. Minnich gave his opinion of the discovery:

> In my opinion, a discovery hasn't been shown. I've never seen any gold at all in the pans and I've never seen any gold that Mr. Smith has shown me, and I know of none that he has sold. As far as the work that I have done, I have never

seen enough gold that I would even attempt to mine it.

Suchy was a witness. He testified to the following: He had examined the claims in 1975. Smith, Sr. had pointed out an area in a road cut which Smith believed to be zinc and Suchy and Millich had taken samples. No zinc was found. Suchy made visual observations and did some panning. He found a small amount of gold color during the panning and the assay report indicated a trace of gold. It was Suchy's opinion that the claims are comprised of glacial and not stream deposits (stream deposits tend to have workable quantities of gold) and that these glacial deposits did not constitute valuable mineral deposits which could be worked.

The defendants argue that the evidence of two experts who spent an hour testing the defendants' claims in the absence of the defendants is not sufficient to establish a prima facie case of non-discovery. I conclude that there is substantial evidence to support the ALJ's finding that the government had made a prima facie case of invalidity and that the burden then shifted to the Smiths to prove that the claims were valid. *See Roberts v. Morton*, 549 F.2d 158, 162 (10th Cir. 1975). The experts testified that Smith, Sr. was present at least part of the time and that Smith had pointed out at least one place from which they should and did take samples. The experts' investigation was not as superficial as the defendants contend.

Smith, Sr. testified that he had developed a secret process which recovers gold which is not recovered in the conventional fire assay. He testified that he had recovered gold through this process, but he had not sold appreciable amounts of gold and had not established a gold processing plant. Smith submitted several assays which showed very high silver, gold and platinum values. The ALJ properly did not rely on these assays because the acceptability of the practices in taking the samples had not been demonstrated. The ALJ also found Smith's secret method of extracting minerals inherently incredible. I conclude that

there was substantial evidence to support the ALJ's decision that the defendants did not prove a valuable mineral discovery.

3. *New Evidence*

■ The defendants offer new evidence which was not before the BLM and BLA to show that the claims are a valuable mineral discovery. The new evidence is the affidavits of Smith, Sr. and Robert Lants, stating that there are new discoveries of valuable minerals. As stated above, my review is confined to the agency record and such portions of it which the parties may cite, and additional evidence is not to be admitted. *Roberts v. Morton*, 549 F.2d at 161.

The defendants rely on a social security case which states that an exception to administrative res judicata exists in the following situation: "in support of a new application, new and material evidence is offered which is of sufficient weight that it may result in a different determination." *Harrah v. Richardson*, 446 F.2d 1, 2 (4th Cir. 1971). The exception is not applicable to the situation presented here. *Harrah* refers to a different situation where an applicant has made one application which is denied by the agency and then makes a second application. The denial of the first application is not res judicata with regard to the second application if the applicant shows that there is new evidence that will change the result in the second application. Judicial review of the agency denial of the first application is now before this court. My role is to review the evidence that was before the agency to determine if the agency decision was supported by substantial evidence. It is not appropriate for me to consider new evidence.

4. *Order to Enjoin Defendants from Further Occupation*

■ The United States contends that because the defendants do not have rightful claim to the lands, it is entitled to an order directing the defendants to remove themselves and their possessions from the land and directing that if they do not do so by a specified date, the remaining structures will

be deemed abandoned and the property of the United States. The defendants have a structure on Lucky 7 Claim No. 12 and no permit permitting construction or improvement on Forest Service land, as required by 36 C.F.R. 261.10(a). On July 18, 1980, the defendants were given notice to vacate the Lucky 7 Claim Nos. 11 and 12 and to remove all improvements on the claims or forfeit possession to the United States.

The United States is entitled to the order that it seeks. *See United States v. Goldfield Deep Mines Co. of Nev.*, 644 F.2d 1307 (9th Cir. 1981). The United States' motions for partial summary judgment on Count III and to dismiss counterclaim I are granted.

COUNT V

 The United States moves for partial summary judgment on Count V of the amended complaint. Count V alleges that at all times pertinent to this action, the defendants have conducted operations on their alleged mining claims without an operating plan approved by the Forest Service, in violation of 16 U.S.C. Section 551 and 36 C.F.R., Part 252.

The affidavit of William Novitske, an employee of the Forest Service, states that he is familiar with the defendants' operations of Blue Mountain claims No. 23 and 27 and describes the structures on those claims. Photographic exhibits are appended to his affidavits. The photographs show the structures on and the scarification and clearing of the land as of August 14, 1981.

Frank Rasmussen, District Ranger, in a letter dated September 5, 1980, wrote to Smith, Sr. that Smith was mining in an area withdrawn from mineral entry. Rasmussen asked Smith to cease operations immediately and stated that if Smith wished to operate outside the withdrawal area, 36 C.F.R. 252.4 requires a plan of operations to be filed with the Forest Service District where the mining is to take place.

36 C.F.R. Part 252, promulgated by the Secretary of Agriculture, pursuant to 16 U.S.C. Sections 478 and 551 requires claimants to file a plan of operation and obtain Forest Service approval of that plan before conducting work in connection with prospecting, exploration or mineral development and processing. Section 252.4(a) provides that a "notice of intention to operate is required from any person proposing to conduct operations which might cause disturbances of surface resources." The Ninth Circuit has approved the authority of the Forest Service to regulate the use of forest lands. *United States v. Goldfield Deep Mines Co. of Nev.*, 644 F.2d at 1309.

The defendants do not dispute the fact that they are not operating under a plan approved by the Forest Service.

The affidavit of Smith, Sr. states that in 1976 and 1977 he and others "met with the Forest Service, Fish and Wildlife, D.E.Q., and Oregon Department of Geology." The affidavit continues, stating that a "mining operation plan" was then "agreed upon, drawn and submitted to all agencies, including the Forest Service," and all mining has been pursuant to such plan. "The Forest Service has not made any attempt to work with me to develop any other plan.... I have either complied with all mining operation plans or have been mining under the minimum requiring no operating plan. I have relied upon the representatives of the Forest Service in complying with operational plans and have complied with all their requests."

The affidavit of Smith, Sr. does not establish a material issue of fact. The affidavit merely establishes that the defendants submitted a plan to the Forest Service; it does not establish that the defendants submitted a plan that was approved by the Forest Service, as is required by 36 C.F.R. Part 252. The defendants' memorandum of law, which is not evidence, implies that the defendants were misled by the Forest Service and perhaps hints at an estoppel argument, but "a motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data." *Angel v. Seattle First National Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981).

The defendants have significantly disturbed the land and have not obtained approval of an operating plan, as required by

C.F.R. 252.4. The United States is entitled to partial summary judgment on Count V.