**UNITED STATES of America, Plaintiff,**

v.

**Sylvia LANGLEY, et al., Defendants.**

**Civ. No. S–75–664 TJM.**

United States District Court,
E.D. California.

May 11, 1984.

Donald B. Ayer, U.S. Atty., Louis Demas, Asst. U.S. Atty., Sacramento, Cal., for plaintiff.

Charles R. Gamble, in pro. per.

## MEMORANDUM AND ORDER

MacBRIDE, District Judge.

### BACKGROUND

Plaintiff, United States of America, brought this action in 1975 for ejectment of persons occupying the Last Stand Mining Claim, an unpatented mining claim located on public land in the Shasta-Trinity National Forest. In its Second Amended Complaint for Ejectment, filed May 18, 1978, the government alleged that the land at issue "is owned by plaintiff and is part of the Shasta-Trinity National Forest situated in Trinity County in the State and Eastern District of California...." The Complaint also alleged that "[d]efendants, without right and in trespass, moved onto and have lived on and occupied said lands of the plaintiff, and a cabin or other structure located thereon."

The Last Stand Mining Claim was originally located by Max Barrett in 1954. Defendant Charles R. Gamble acquired the interest of the original defendants in this action, Sylvia Langley, Fredrick Langley, and Clark Thompson, on October 23, 1977. In his verified answer, filed October 28, 1981, Gamble raised the defense that he is the owner of the mining claim on the land in question, that the claim has been duly and regularly located and entered under the mining laws of the United States, that he has the exclusive right of possession and enjoyment of the surface within the lines of location, and that "the structures and buildings on defendant's mining claims on the land described in plaintiff's complaint are used in connection with prospecting, mining or processing operations and uses reasonably incident thereto...."

By Memorandum and Order, filed April 12, 1982, the court granted partial summary judgment for plaintiff, declaring that the land at issue was public land of the United States. On August 2, 1982, plaintiff moved for partial summary judgment, seeking an order directing defendant to vacate the land, and an injunction limiting his use of the land. In support thereof, plaintiff contended, 1) the defendant is not occupying the claim in good faith for mining purposes; 2) that defendant's residence on the land, and other uses which he is making of the land, are not "incident to mining" as required by the Surface Resources Act of 1955, 30 U.S.C. §§ 611 *et seq.;* and 3) that defendant has failed to comply with applicable Forest Service regulations governing use of the land, 36 CFR Part 228.

A hearing was held on September 14, 1982, and, by Order, filed on September 27, 1982, the court stayed the proceedings for six months to allow Gamble to exhaust his administrative remedies under 36 CFR Part 228, and to permit the United States Forest Service to exercise its primary jurisdiction thereunder.

During the pendency of the stay, the Forest Service repeatedly notified Gamble that his residence and operations were causing a significant disturbance of surface resources, and that pursuant to 36 CFR 228.4 he was required to submit a Plan of Operations to the District Ranger.[1] By letter dated December 27, 1982, the Forest Service notified Gamble of his noncompliance with 36 CFR 228.4, and set forth the following conditions:

1. You must immediately vacate National Forest land.
2. All structures, enclosures, garden fencing, water lines, garbage, litter and unserviceable equipment must be immediately removed from the National Forest.
3. The area you are presently occupying must be cleaned up and restored to as near natural condition as possible.
4. All access roads to the area you are occupying must be water-bared and closed to traffic.

The letter advised Gamble of his right to appeal these conditions and set January 27, 1983, as the deadline for appeal. These conditions were subsequently held in abeyance, and the deadline for appeal extended to February 15, 1983, and later to April 4, 1983.

On April 1, 1983, Gamble submitted a proposed "Plan of Operation" to the Forest

---

1. 36 CFR § 228.4(a) provides that "[i]f the District Ranger determines that [mining] operations will likely cause significant disturbance of surface resources, the operator shall submit a proposed plan of operations to the District Ranger."

Service. The Forest Service replied by letter—personally delivered to Gamble on May 2, 1983—requesting a substantial amount of supplementary information [2] and notifying Gamble that it was no longer holding in abeyance the four conditions mentioned above. The letter informed Gamble that until a Plan of Operations had been approved by the Forest Service, he was forbidden to "conduct any operation, reside on the mining claim, maintain personal property or maintain any structures without the express, written, prior permission of the Forest Service." No reply has yet been received from Gamble, nor has any appeal been taken.

On April 7, 1983, this court held a status conference, but Gamble failed to appear. On May 24, 1983, the government renewed its motion for summary judgment, requesting ejectment and injunctive relief. The motion was heard on June 21, 1983, and was then taken off calendar pending submission by plaintiff of a brief on the issue of whether plaintiff is entitled to the relief prayed for in its motion pursuant to its second amended complaint. This brief was filed on July 5, 1983, and defendant's responsive papers were filed on August 12, 1983. In his response, Gamble claimed to have obtained an approved Plan of Operations as of June 30, 1983. Gamble was requested by this court, on August 24, 1983, to submit a copy of such plan forthwith. No such copy having been received, this matter is deemed submitted.

## DISCUSSION

### Standard for Summary Judgment

Fed.R.Civ.P. 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." All facts and inferences drawn from the foregoing materials must be viewed in the light most favorable to the non-moving party. *Clipper Exxpress v. Rocky Mountain Motor Tarrif,* 690 F.2d 1240, 1250 (9th Cir.1982), *cert. denied,* 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983).

The relief sought by plaintiff in its motion for summary judgment amounts to ejectment and a prohibitory injunction. Plaintiff bears the burden of demonstrating the absence of any material issue of fact, and establishing its entitlement to the relief sought as a matter of law. *Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.,* 707 F.2d 1030, 1033 (9th Cir.1983). Once, however, this burden is met by presenting evidence which, if uncontradicted, would entitle plaintiff to a directed verdict at trial, the burden shifts to the defendant to "set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate,, should be entered against him. Fed.R.Civ.P. 56(e); *Avila v. Travelers Ins. Co.,* 651 F.2d 658, 660 (9th Cir.1981).

### Ejectment

Gamble came into possession of the land at issue in October 1977, having purchased and acquired a deed to the unpatented mining claim from the previous owner. *See* Deposition of Charles R. Gamble, May 17, 1982, at 7 [hereinafter cited as "Deposition at ——"]. Under 30 U.S.C. § 26, the owner of a valid, unpatented mining claim on public land has the exclusive right of possession and enjoyment of the land.[3] Accordingly, in order to succeed in its action for ejectment, plaintiff must establish that Gamble's claim is invalid, either because he has failed to make a mineral discovery, or because he is not occupying the land in good faith for mining purposes. *See United States v. Noguiera,* 403 F.2d 816, 823–25 (9th Cir.1968).

At this time, plaintiff is not challenging Gamble's claim based upon failure

---

**2.** Under 36 CFR 228.5, the Forest Service, upon receipt of a proposed plan of operations, may "[n]otify the operator of any changes in, or additions to, the plan of operations deemed necessary to meet the purpose of the regulations in this part."

**3.** 30 U.S.C. § 26 provides in relevant part:

The locators of all mining locations made on any mineral vein, lode, or ledge, situated on the public domain, their heirs and assigns ... so long as they comply with the laws of the United States, and with State, territorial, and local regulations not in conflict with the laws of the United States governing their possessory title, shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations.

to make a discovery. It is, however, contesting the claim on the basis that Gamble is not occupying the land in good faith for mining purposes. Under these circumstances, there is no need for the court to withhold judgment pending an administrative determination of whether the claim is otherwise valid. *United States v. Russell,* 578 F.2d 806, 807–08 (9th Cir.1978); *Noguiera,* 403 F.2d at 824.

■ Plaintiff maintains, based upon parts of Gamble's deposition, that Gamble is using the mining claim *primarily* as a residence, and is engaged in agricultural and other pursuits unrelated to mining. Plaintiff cites portions of Gamble's deposition which indicate that he has no other residence, that he maintains a garden on the claim, that he has cleared land for an orchard, and that he has raised hogs and chickens on the land. *See* Deposition at 11–30 *passim.* While the cited portions of the deposition lend support to the plaintiff's position, other portions show that Gamble is engaged in mining activity on the claim, and has found some gold and sold it. *See* Deposition at 99–105 *passim.* As previously indicated, on a motion for summary judgment, the material presented and the inferences to be drawn therefrom are viewed in the light most favorable to the non-movant. Moreover, "a court should be wary of granting summary judgment when good faith is in question." *Hotel and Restaurant Employees and Bartenders Int'l Union v. Rollison,* 615 F.2d 788, 793 (9th Cir.1980); *Baldini v. Local Union No. 1095,* 581 F.2d 145, 151 (7th Cir.1978).

In *United States v. Noguiera,* 403 F.2d at 825, similar issues as to the good faith of the possessor of an unpatented mining claim were raised. The Ninth Circuit held

that "the complaint presented questions of fact to be determined by the trial court as to the good or bad faith of the locator in filing the mining claim, and the good or bad faith of the possessor as to uses to which it was being put; and that these were evidentiary questions which the district court ... should have decided on a factual hearing." *Accord, United States v. Haskins,* 505 F.2d 246, 253 (9th Cir.1974).

■ Viewing the material lodged and the inferences to be drawn therefrom in the light most favorable to Gamble, this court finds that there remains a genuine issue of fact as to the good or bad faith involved in Gamble's use of the claim. Accordingly, plaintiff's motion, to the extent that it seeks ejectment, must be denied.

*Injunction*

Plaintiff contends that it is entitled to an injunction based upon Gamble's improper and unapproved use of the mining claim. Gamble's present and proposed uses of the claim, it is argued, violate both the Surface Resources and Multiple Use Act of 1955 ["Surface Resources Act"], Pub.L. No. 84–167, 69 Stat. 367 (codified at 30 U.S.C. §§ 611–612),[4] and Forest Surface regulations found at 36 CFR Part 228.[5] Even assuming, arguendo, that Gamble's mining claim will ultimately be upheld, this court has power to consider and enjoin violations of the Surface Resources Act, *see Noguiera,* 403 F.2d at 825, or of applicable Forest Service regulations, *see United States v. Goldfield Deep Mines of Nevada,* 644 F.2d 1307, 1309 (9th Cir.1981) ("[T]he right to protect Forest Service lands from waste is separate from and in addition to the right to challenge mining claims.... There was no need to exhaust mining-claim proceed-

**4.** 30 U.S.C. § 612 provides in pertinent part:

Rights under any mining claim hereafter located under the mining laws of the United States shall be subject, prior to issuance of a patent therefor, to the right of the United States to manage and dispose of the vegetative surface resources thereof.... Any such mining claim shall be subject, prior to issuance of patent therefor, to the right of the United States ... to use so much of the surface thereof as may be necessary for such purposes or for access to adjacent land....

The Ninth Circuit has observed that Congress did not intend to change the basic principles of the mining laws when it enacted the Surface Resources Act. *United States v. Curtis-Nevada*

*Mines, Inc.,* 611 F.2d 1277, 1280 (9th Cir.1980). Instead, the Act was intended as corrective legislation which attempted to clarify the law and to alleviate abuses which had occurred under the mining laws. *Id.;* H.R.Rep. No. 730, 84th Cong., 1st Sess. 7–8, *reprinted in* [1955] 2 U.S. Code Cong. & Admin.News, pp. 2474, 2480.

**5.** 36 CFR Part 228 sets forth the rules and procedures under which mining operations on the surface of National Forest land are to be conducted so as to minimize any adverse environmental impact on surface resources.

ings before enjoining destruction of forest lands."), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1252, 71 L.Ed.2d 445 (1982).

■ The problem with the plaintiff's argument regarding the Surface Resources Act is that the Act applies only to claims "hereafter located", 30 U.S.C. § 612(a); [6] that is, located after July 23, 1955, the effective date of the Act. *Converse v. Udall,* 262 F.Supp. 583, 585–86 (D.Ore. 1966), *aff'd,* 399 F.2d 616 (9th Cir.1968), *cert. denied,* 393 U.S. 1025, 89 S.Ct. 635, 21 L.Ed.2d 569 (1969). The Last Stand Mining Claim was located by Max Barrett on May 17, 1954. Thus, since plaintiff has not demonstrated any exception to the Act's prospective application, relief on this basis cannot be granted.[7]

However, even if the Surface Resources Act does not apply, the court may enjoin uses not incident to mining based upon other statutory and decisional authority. In *United States v. Coleman,* 390 U.S. 599, 602, 88 S.Ct. 1327, 1330, 20 L.Ed.2d 170 (1968), the Court noted that "[u]nder the mining laws Congress has made public lands available to people for the purpose of mining valuable mineral deposits and not for other purposes", citing the Act of May 10, 1872, 17 Stat. 92 (codified at 30 U.S.C. § 29), as amended. The Ninth Circuit has also recognized that even prior to the Sur-

face Resources Act, the grant of possessory rights to mining claimants "was consistently recognized *so long as the uses were incident to prospecting and mining." United States v. Richardson,* 599 F.2d 290, 293 (9th Cir.1979), *cert. denied,* 444 U.S. 1014, 100 S.Ct. 663, 62 L.Ed.2d 643 (1980) (emphasis added). *Accord, United States v. Springer,* 321 F.Supp. 625, 627 (C.D.Cal. 1970) ("Prior to 1955 it would seem clear that a mining claimant could not use the claim for any purposes other than mining purposes and uses reasonably incident to mining...."), *aff'd,* 478 F.2d 43 (9th Cir. 1973).[8] Such an interpretation is particularly appropriate in the context of mining on national forest lands. To permit uses on national forest land under the rubric of "mining" which are not in fact incident to mining or its attendant operations would conflict with the policies underlying both the forest preservation laws and the mining laws since such uses entail potential depredation of forest land without yielding the concomitant benefits to society envisaged by Congress in its passage of the mining laws.

Plaintiff contends that Gamble's residence on the claim is not reasonably incident to mining, relying on *United States v. Noguiera,* 403 F.2d 816 (9th Cir.1968). There, the court held that "permanent residence of the possessor not reasonably re-

---

6. 30 U.S.C. § 612 provides in relevant part:

   Rights under any mining claim hereafter located under the mining laws of the United States shall be subject, prior to issuance of patent therefor, to the right of the United States to manage and dispose of the vegetative surface resources thereof and to manage other surface resources thereof.... Any such mining claim shall also be subject, prior to issuance of patent therefor, to the right of the United States, its permittees, and licensees, to use so much of the surface thereof as may be necessary for such purposes or for access to adjacent land....

7. Section 5 of the Surface Resources Act, 30 U.S.C. § 613, sets forth an *in rem* procedure under which the head of the federal department or agency having surface management responsibility over federal lands may request the Department of the Interior to determine whether certain mining claims were validly located prior to the effective date of the Surface Resources Act. Under section 613(a), 30 U.S.C., the Department of the Interior may publish notices to mining claimants in a newspaper of general circulation in the county in which the actual or prospective

mining claims are located. The notice must specify the lands in question and inform prospective claimants that they are required to file, within 150 days, a verified statement containing specified information regarding the mining claim. Section 613(c), 30 U.S.C., provides that failure to file such a statement within the specified time is deemed to constitute consent by the claimant that the mining claim is subject to the limitations of the Surface Resources Act. In the instant case, however, there is no indication that the notice requirements were followed. Accordingly, the non-retroactivity provision of section 613(a) applies, rendering the Act inapplicable to this case.

8. *See United States v. Etcheverry,* 230 F.2d 193, 195 (10th Cir.1956) ("[T]he exclusive possession of the surface of the land to which the locator is entitled is limited to use for mining purposes.") (applying pre-1955 law); *Teller v. United States,* 113 F.273, 280 (8th Cir.1901) ("Possession of a mining claim ... by well settled authority, confers the right, subject to certain limitations and conditions, upon a locator, to work the claim for precious metals for all time, if he desires to do so, but confers no right to take timber, or otherwise make use of the surface of the claim, re-

lated to prospecting, mining or processing operations is not within the uses described [in the Surface Resources Act, 30 U.S.C. § 612]." 403 F.2d at 825. While, as previously noted, the Surface Resources Act is not applicable in this case, this court may enjoin uses not incident to mining—including residency—based upon the law as it stood prior to the Act. However, the conclusion that the foregoing language from *Noguira* applies irrespective of the Act does not end the enquiry; its necessary corollary is that permanent residence which *is* reasonably related to mining is permissible. *Cf. United States v. Cruthers,* 523 F.2d 1306, 1307 (9th Cir.1975) (Dicta indicating that a miner could construct buildings "to the extent required" for uses "reasonably incident to" or "in connection" with legitimate mining operations).

■ The *Noguiera* court held that the issue of whether the residence was reasonably related to mining was to be "decided on a factual hearing." 403 F.2d at 825. Gamble argues that living quarters must be maintained on the claim in order to conduct a profitable operation, to protect minerals and equipment, and ensure the safety of the public. These contentions are not in affidavit form and are merely conclusory. Nevertheless, the government has not produced sufficient evidence in the first instance to meet its burden of showing as a matter of law that Gamble's residence is not reasonably related to mining or attendant operations.[9] Accordingly, this issue is not susceptible to summary resolution.

The plaintiff also requests that Gamble be enjoined from barring the public from the surface of the claim. The right of the public to use the surface of unpatented mining claims is explicit in the Surface Resources Act, but, as indicated, the Act does not apply in this case. Thus the plaintiff's request must be dealt with according to general mining law as it existed prior to the Act.

Under the general mining law of 1872, locators of valid mining claims obtained "the exclusive right of possession and enjoyment of all the surface included within the lines of their locations." 30 U.S.C. § 26. The use of the word "exclusive" denotes congressional intent that locators should have the right to exclude the general public. "Exclusive" is defined as "[e]xcluding or having the power to exclude, or prevent entrance, debar from possession, participation or use; ... limiting or limited to possession, control or use by a single individual, organization, etc. ...." *Webster's New International Dictionary* at 890 (2d ed. 1939). The locator's possessory rights under the 1872 law were described in *DelMonte Mining & Milling Co. v. Last Chance Mining & Milling Co.,* 171 U.S. 55, 83, 18 S.Ct. 895, 906, 43 L.Ed. 72 (1898):

> A party who is in actual possession of a valid location may maintain that possession and exclude everyone from trespassing thereon, and no-one is at liberty to forcibly disturb his possession or enter the premises.

*Accord, Cole v. Ralph,* 252 U.S. 286, 295, 40 S.Ct. 321, 325, 64 L.Ed. 567 (1919) (locator status creates "an exclusive right of possession and enjoyment, is property in the fullest sense, [and] is subject to sale and other forms of disposal.")

In *United States v. Curtis-Nevada Mines, Inc.,* 611 F.2d 1277, 1283 (9th Cir. 1980), the court indicated that the Surface Resources Act was promulgated largely to limit this exclusive possession in order to permit multiple use by the public. The

---

except so far as it may be reasonably necessary in the legitimate operation of mining."); *accord United States v. Rizzinelli,* 182 F. 675, 684 (D.Idaho 1910) ("[T]he right of a locator of a mining claim to the "enjoyment" of the surface thereof is limited to uses incident to mining operations....").

**9.** Whether or not a non-movant submits competent evidence showing that there is an issue for trial, summary judgment is proper only when it is clear what the truth is, *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 468, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962), and any doubts as to the existence of a genuine issue of fact must be resolved against the movant. *Ad-*

*ickes v. S.H. Kress & Co.,* 398 U.S. 144, 161, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142 (1970). As the court observed in *Virgil v. Time, Inc.,* 527 F.2d 1122, 1131 n. 15 (9th Cir.1975), *cert. denied,* 425 U.S. 998, 96 S.Ct. 2215, 48 L.Ed.2d 823 (1976), "[d]enial (as distinguished from grant) of summary judgment involves not only pure questions of law; it involves as well an exercise of discretion upon the question whether decision should be postponed until it can be founded on a more complete factual record." This court is unable to conclude on the basis of the evidence presented to date that the residence is not reasonably related to mining or its attendant operations. Accordingly, this issue must be resolved at trial.

court acknowledged that "[b]efore the 1955 Act this exclusive possession and use was recognized so long as the use was incident to prospecting and mining."

■ Since the Surface Resources Act does not apply in this case, it seems clear that Gamble has the right to exclude members of the public from the claim. Accordingly, plaintiff will not be entitled to an injunction restraining him from excluding the public unless and until it demonstrates at trial that Gamble is occupying the claim in bad faith.

### Forest Service Regulations

"Since 1897 the Secretary of Agriculture has had authority under sections 478 and 551 of Title 16 [The Organic Administration Act of 1897] to promulgate regulations concerning the methods of prospecting and mining in national forests...." *United States v. Richardson*, 599 F.2d 290, 292 (9th Cir.1979). Section 551 of Title 16, 30 Stat. 35, as amended provides,

The Secretary of Agriculture shall make provisions for the protection against destruction by fire and depredations upon the public forests and national forests ... [and] may make such rules and regulations and establish such service as will ensure the objects of such reservations....

Section 478 of Title 16, 30 Stat. 36, provides,

Nothing in sections 473 to 478, 479 to 482 and 551 of this title ... [shall] prohibit any person from entering upon such national forests for all proper and lawful purposes, including that of prospecting, locating, and developing the mineral resources thereof. Such persons must comply with the rules and regulations covering such national forests.

Under this authority, regulations were promulgated by the Secretary of Agriculture on August 28, 1974, and appeared at 36 CFR Part 252 (now 36 CFR Part 228). The avowed purpose of the regulations is "to set forth rules and procedures [under] which use of the surface of National Forest System lands in connection with operations authorized by the United States mining laws (30 U.S.C. [§§] 21–54) ... shall be conducted so as to minimize adverse environmental impacts on National Forest System surface resources." The regulations have been consistently upheld by the Ninth Circuit. *See, e.g., United States v. Goldfield Deep Mines Co. of Nevada*, 644 F.2d 1307, 1309 (9th Cir.1981); *United States v. Weiss*, 642 F.2d 296, 298 (9th Cir.1981). The government contends that Gamble is conducting mining operations and residing on the claim in violation of the regulations.

Part 228.4 of the regulations provides that any person "proposing to conduct operations which might cause disturbance of surface resources" must file a notice of intention to operate with the District Ranger. If the District Ranger determines that the operations "will likely cause significant disturbance of surface resources," he shall inform the operator that he must submit a Plan of Operations. *Id.* The Plan of Operations must include, among other things, the names and addresses of all persons conducting operations on the claim, a map of the proposed area of operations including all access routes and indicating the location and size of areas where surface resources will be disturbed, and,

Information sufficient to describe or identify the type of operations proposed and how they would be conducted, the type and standard of existing and proposed roads or access routes, the means of transportation used or to be used, ... the period during which the proposed activity will take place, and the measures to be taken to meet the requirements for environmental protection....

36 CFR 228.4(c)(3). Upon receipt of the plan, the Forest Service has several options, including requesting an environmental impact statement, 36 CFR 228.5(a)(5), authorizing limited operations pending final approval of the plan, *id.* at 228.5(b), or "[n]otify[ing] the operator of any changes in, or additions to, the plan of operations deemed necessary to meet the purpose of the regulations...." *Id.* at 228.5(a)(3).

At the request of the Forest Service, Gamble submitted a notice of intent to operate, pursuant to 36 CFR 228.4, dated August 20, 1982. On November 4, 1982, the Forest Service notified Gamble that his present and proposed operations would likely cause a significant surface disturbance and, accordingly, that he would be required to submit a Plan of Operations. The letter further noted that Gamble had indicated that he would be occupying an existing structure on the claim and that, in order for the structure to be authorized under an operating plan, it would have to

be shown to be reasonably necessary to the proposed mining activities. Gamble was requested to define the proposed terms, tenure and conditions of his occupancy in his Plan of Operations. On April 1, 1983, Gamble submitted a one-page document entitled "Plan of Operation" which stated in conclusory fashion that no surface resources would be disturbed and that the conditions of his occupancy would be the same as they had been in the past. The Forest Service found the Plan inadequate and delivered a letter to Gamble requesting a substantial amount of additional information pursuant to 36 CFR 228.5(a)(3). Gamble did not respond to this letter and, to date, has not obtained an approved Plan of Operations from the Forest Service. Nor has he filed an appeal from any decision or action by the Forest Service.[10]

There can be little doubt that the Forest Service regulations apply to Gamble's mining operations and to his residence. The regulations, by their terms, apply to

> All functions, work, and activities in connection with prospecting, exploration, development, mining or processing of mineral resources and all uses reasonably incident thereto, including roads and other means of access on lands subject to the regulations ... regardless of whether said operations take place on or off mining claims.

36 CFR 228.3(a).

Since the only justification for Gamble's residence on National Forest land is that it is reasonably incident to mining, the regulations cover the residence and its curtilege.

It is equally clear that Forest Service regulations may be enforced in federal district court by injunction or otherwise.[11] *See United States v. Hunt,* 19 F.2d 634, 641 (D.Ariz.1927). In *United States v.*

*Smith-Christian Mining Enterprises, Inc.,* 537 F.Supp. 57, 64 (D.Ore.1981), the government sought relief identical to that requested in this case: partial summary judgment enjoining defendants from conducting operations on national forest land without an approved Plan of Operations from the Forest Service pursuant to 36 CFR 252 (now 228). Finding that "[t]he defendants have significantly disturbed the land and have not obtained approval of an operating plan, as required by C.F.R. 252.-4," [now 228.4] the district court enjoined the defendants from residing, conducting operations, and placing structures on national forest land in the absence of an approved Plan of Operations. *Id.* at 64–65.

The Ninth Circuit has consistently upheld such injunctions in the face of challenges to the constitutional or statutory validity of the Forest Service regulations. In *United States v. Goldfield Deep Mines Co. of Nevada,* 644 F.2d 1307 (9th Cir.1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1252, 71 L.Ed.2d 445 (1982), the government sought an injunction prohibiting the defendants from conducting mining operations on national forest lands in the absence of an approved Plan of Operations. The district court granted summary judgment for the government, enjoining defendants from disturbing or damaging the surface of national forest lands, or from maintaining any structures or equipment thereon, without having obtained an approved Plan of Operations, and from failing to comply in any respect with the regulations of the Secretary of Agriculture contained at 36 CFR. *Id.* No. 77–0307–LEW (C.D.Cal.1977) (order granting partial summary judgment for injunctive relief). The Ninth Circuit affirmed, holding that "[w]hile regulation of mining per se is not within Forest Service jurisdiction, where mining activity disturbs national forest lands, Forest Service regu-

---

**10.** 36 CFR 228.14 sets forth the procedure for appeal from decisions of authorized forest service officers. Under this procedure, the person aggrieved may file with the authorized officer a written statement of disagreement with the decision within thirty days of the decision. Upon receipt of this statement, the authorized officer must prepare his own statement explaining the decision and forward it, together with a copy of appellant's statement to his immediate supervisor. The reviewing officer must render his decision within 45 days of receipt of the statements.

Despite the fact that the Forest Service repeatedly notified Gamble of his right to appeal

any of its decisions, and several times extended the deadline for appeal, Gamble never availed himself of the appeal procedure.

**11.** Indeed, violations of the regulations may subject the violator to criminal sanctions under 16 U.S.C. § 551 which provides that "any violation of the ... rules and regulations [enacted for the protection of national forests] shall be punished by a fine of not more than $500 or imprisonment for not more than six months, or both."

lation is proper." 644 F.2d at 1307. The court rejected defendants' argument that the Act authorizing the Forest Service to enforce its regulations (16 U.S.C. § 551) violated the Fifth or Sixth Amendments, and found "no valid constitutional, procedural or statutory argument against the district court's grant of partial summary judgment." *Id.* 644 F.2d at 1310.

Faced with similar arguments, the court in *United States v. Weiss,* 642 F.2d 296 (9th Cir.1981), reached the same conclusion. In *Weiss,* defendants, owners of unpatented mining claims on national forest lands, were informed by the Forest Service that regulations had been promulgated requiring them to file a Plan of Operations for their mining venture. There, as here, defendants had been in contact with the Forest Service regarding their operations but had not obtained approval of a Plan of Operations. The government sought an injunction restraining defendants from conducting any mining activity which could result in disturbance of surface resources pending compliance with Forest Service regulations. Finding no genuine issues of fact, the district court granted summary judgment enjoining defendants as requested. The Ninth Circuit upheld the injunction over defendants' objection that the regulations had not been promulgated pursuant to adequate statutory authority. The court stated:

> We believe that the Act of 1897, 16 U.S.C. §§ 478 and 551, granted to the Secretary the power to adopt reasonable rules and regulations regarding mining operations within the national forests.... [I]t is clear that persons entering the national forests to prospect, locate, and develop mineral resources therein are subject to and must comply with the rules and regulations covering the national forests.

642 F.2d at 298.

The foregoing cases dealt with fact patterns identical in substance to that involved here. Gamble is engaging and intends to engage in mining operations and other activities, including residing on the claim, which are likely to cause a significant disturbance of surface resources, without having obtained an approved Plan of Operations. Gamble's assertion in his memorandum of August 12, 1983, that he had "filed a Plan of Operation prior to

approved plan of June 20, 1983" does not establish a genuine issue of fact. In *Smith-Christian Mining,* 537 F.Supp. 57, defendants filed an affidavit in opposition to summary judgment which stated that a Plan of Operations had been submitted to the Forest Service. The court found this evidence immaterial, noting that the affidavit merely established that defendants submitted a Plan, not that the Plan was approved as required by 36 CFR 228. The same reasoning applies *a fortiori* here, since Gamble's assertion is not even in affidavit form. The reference to an "approved plan" is equally unavailing since a "memorandum of law ... is not evidence ... [and] 'a motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data.'" *Smith-Christian Mining,* 537 F.Supp. at 64 (quoting *Angel v. Seattle First National Bank,* 653 F.2d 1293, 1299 (9th Cir.1981). Gamble was afforded ample time and opportunity to submit any evidence of an approved Plan of Operations but failed to do so.

This court finds that Gamble has engaged and intends to engage in mining operations—including use of a D-4 caterpillar with a backhoe attachment—that will create a significant surface disturbance on national forest land without having obtained an approved Plan of Operations. The court further finds as a matter of law that the maintenance of a fixed residence by defendant creates a sufficiently significant surface disturbance as to require an approved Plan of Operations pursuant to 36 CFR 228. The impact of the residence and its curtilage on the soil and vegetation and the attendant disruption of the ecology of the area, the potential and actual littering of the land, the necessity for waste water discharge, refuse and sewage disposal, the danger of fire from cooking and heating appliances and from combustible materials stored on the premises—including gasoline stored in 55-gallon drums, kerosene, and propane—plainly generate significant extant and potential disturbances of surface resources. Furthermore, it is undisputed that Gamble,

1. Has cleared land preparatory to planting an orchard. Deposition at 11–14.

2. Has raised up to six chickens, *id.* at 27, and eleven pigs on the claim. *Id.* at 20.

3. Maintains a pig pen, approximately thirty by thirty feet in area. *Id.* at 20.

4. Is storing five or more inoperative vehicles on the property. *Id.* at 30.

5. Maintains a fenced garden of approximately one-quarter acre, *id.* at 17, and plans to increase its size. *Id.* at 19.

These uses result in palpable surface disturbances and manifestly prevent natural forest regeneration.

Accordingly, defendant will be enjoined from maintaining a residence or engaging in any of the aforementioned uses—including mining—in the absence of an approved Plan of Operations.

### CONCLUSION

In light of the foregoing, plaintiff's motion, insofar as it seeks ejectment, is denied. That part of the motion seeking permanently to enjoin defendant from residing on the claim or excluding the public from the claim is also denied.

That part of the motion seeking to enjoin defendant from either maintaining a residence or engaging in mining activities without having obtained an approved Plan of Operations is granted. The injunction will follow.

IT IS SO ORDERED.

### Partial Summary Judgment For Injunctive Relief

Plaintiff's motion for summary judgment having come on regularly for hearing, and the court having heard oral argument, having considered the pleadings and papers on file, and having signed and filed its memorandum opinion herein,

NOW, THEREFORE, IT IS HEREBY ORDERED:

I

Defendant Charles R. Gamble, his agents and employees, and all other persons or entities acting in concert or participation with him who receive actual notice of this injunction [hereinafter collectively referred to as "defendant"], are hereby permanently enjoined from engaging in any and all of the following uses and activities on land in the N.W. ¼ of Section 26, Township 7 North, Range 7 East, H.M., on the East side of New River where the cement bridge crosses the river, situated in Trinity County in the State of California, without having obtained approval from the United States Forest Service, pursuant to 36 CFR § 228, of a Plan of Operations particularly describing such uses and activities:

(a) From disturbing, damaging, or defacing the surface of the above-described property, or the vegetation thereof, or from conducting any kind of digging, dredging, excavating, or mining thereon, except that defendant may continue to explore or prospect for minerals with hand tools and to remove small mineral samples, provided that defendant makes no disturbance of the surface of the land in excess of one cubic yard of material in any one location on the property, and that no vehicles are driven on roads, trails, paths, or any other areas which have not been approved for vehicle use by the United States Forest Service pursuant to 36 CFR § 228.-12.

(b) From residing on the above-described property, from improving, maintaining, or occupying the structures presently located thereon, or from constructing, maintaining, or occupying any new house, cabin, trailer, or any other habitation on the property except in enjoyment of rights granted the public generally.

(c) From clearing land in preparation for, planting, or maintaining any garden or orchard on the property.

(d) From bringing onto or keeping on the property any farm animal, including, but not limited to, hogs, pigs, or chickens or erecting or maintaining any structure or enclosure designed to house or restrain such animals.

(e) From keeping or storing any derelict, abandoned, or disused vehicles or equipment on the above-described property.

II

Defendant is further enjoined:

(a) From threatening, assaulting, harassing, obstructing, or in any manner whatsoever interfering with officers of the United States Forest Service or any other officers of the United States while engaged in the proper performance of their duties including but not limited to inspection or administration of the above-described property and enforcement of this injunction.

(b) From failing to comply in each and every respect with the provisions of the Regulations of the Secretary of Agriculture contained in Volume 36 of the Code of Federal Regulations.

### III

(a) Those portions of this injunction restraining defendant from maintaining or occupying the structures presently located on the claim, and from maintaining any garden or orchard located thereon, shall become effective thirty days from the date this injunction is filed unless within that period defendant has submitted a Plan of Operations to the Forest Service which specifically describes the terms and tenure of his residency on the claim and the size and nature of any garden and orchard thereon. If defendant submits such a Plan of Operations within the specified time, the above-referenced portions of the injunction shall become effective thirty days from the date a written decision by the Forest Service regarding defendant's Plan is either personally delivered to defendant, or, if personal delivery proves impracticable despite a good faith effort, mailed to defendant's last known mailing address and posted on the above-described property, unless within that time defendant has obtained final approval of his Plan of Operations.

(b) The remaining portions of the injunction shall become effective upon the filing of this injunction.

(c) In the event that defendant submits a Plan of Operations, and approval for the Plan or any portion thereof is denied by the Forest Service, defendant must exhaust administrative remedies prior to seeking judicial review of such denial, and, while administrative or judicial review is pending, defendant may not conduct any activity that is barred by this injunction for which approval was sought and denied.

IT IS SO ORDERED.